DENNIS, Circuit Judge,
Specially Concurring:
The majority holds that a plaintiff, who brings a 42 U.S.C. § 1983 action arising out of the suicide of a pretrial detainee resulting from the violation of her rights to physical protection and medical services under the Due Process Clause of the Fourteenth Amendment, must show that the responsible officials had subjective knowledge of a substantial risk of serious harm to the pretrial detainee but responded to that risk with “deliberate indifference,” as defined by the Eighth Amendment case of Farmer v. Brennan, — U.S. -, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). I concur only in the judgment vacating the district court decision and remanding the case for further proceedings because (1) application of the “deliberate indifference” test (for determining cruel and unusual punishment of convicts) to pretrial *651 detainees’ claims is inconsistent with prior Supreme Court decisions that detainees are guiltless individuals protected by a broader Due Process Clause right to be free from any punishment whatsoever; and (2) even if pretrial detainees are to be shielded only from cruel and unusual punishment as measured by the “deliberate indifference” standard, the majority opinion’s failure to consistently articulate fully the Farmer v. Brennan definition of that standard runs the risk of affording pretrial detainees less protection from inhumane treatment than convicted criminals.
1.
In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871-1872, 60 L.Ed.2d 447 (1979). A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a judicial determination of probable cause as a prerequisite to the extended restraint of his liberty following arrest. Id. at 536, 99 S.Ct. at 1872-1873. Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution. Id. at 536-537, 99 S.Ct. at 1872-1873.
Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be “cruel and unusual” under the Eighth Amendment. Id. at 535, n. 16, 99 S.Ct. at 1872, n. 16. The Court recognized this distinction in Ingraham v. Wright, 430 U.S. 651, 671-672, 97 S.Ct. 1401, 1412-1413, 51 L.Ed.2d 711 (1977): “Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. See United States v. Lovett, 328 U.S. 303, 317-318 [66 S.Ct. 1073, 1079-1080, 90 L.Ed. 1252] (1946)_ [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.” Id at 671 n. 40, 97 S.Ct. at 1413 n. 40. In other words, “the Fifth Amendment includes freedom from punishment within the liberty of which no person may be deprived without due process of law.” Bell v. Wolfish, 441 U.S. at 535, n. 17, 99 S.Ct. at 1872, n. 17 (1979).
In determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word, a court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Id. at 538, 99 S.Ct. at 1873-74. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on “whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].” Id., quoting Kennedy v. Mendoza-Martinez, 372 U.S. at 168-169, 83 S.Ct. at 567-568. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to “punishment.” Conversely, if a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Bell v. Wolfish, 441 U.S. at 539, 99 S.Ct. at 1874.
I respectfully disagree with the majority’s conclusion that “the Bell test retains vitality *652 only when a pretrial detainee attacks general conditions, practices, rules, or restrictions of pretrial confinement” and is completely inapplicable when “a pretrial detainee’s claim is based on a jail official’s episodic acts or omissions ...” Hare v. City of Corinth, at 643-644. The Bell Court did not place any such limitation on its holding that, under the Due Process Clause, a pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.
Instead, the Court specified that the factors identified in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) provide useful guideposts in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word. While it is all but impossible to compress the distinction into a sentence or a paragraph, the Mendoza-Martinez Court described the tests traditionally applied to determine whether a governmental act is punitive in nature:
Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. Id. at 168-169, 83 S.Ct. at 567-568 (footnotes omitted).
Accordingly, in Bell v. Wolfish, the Court concluded that if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more — such as a showing of an expressed intent to punish— amount to “punishment.” Conversely, the Court stated, if a restriction or condition is not reasonably related to a legitimate goal— if it is arbitrary or purposeless — a court may permissibly infer that the purpose of the governmental action is punishment that may not be inflicted upon detainees. Id. at 539, 99 S.Ct. at 1874. Moreover, as an illustration of an arbitrary or excessive restriction or condition, the Court gave the following example of an official’s act or omission against an individual detainee:
“[Lfoading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so may (sic) alternative and less harsh methods, would not support a conclusion that the purpose for which they were imposed was to punish.” Id. at n. 20. (Emphasis added).
The Supreme Court has not rendered any decision since Bell v. Wolfish that detracts from its vitality when applied to a pretrial detainee’s deprivation of the due process right to liberty from punishment caused by the episodic act or omission of an individual jail official. In fact, in Wilson v. Setter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) the Court expressly refused to recognize a distinction between cases involving “conditions of confinement” and others arising from “specific acts or omissions directed at individual prisoners” in its Eighth Amendment cruel and unusual punishment analysis. Id. at n. 1. The Court reasoned:
It seems to us ... that if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement, whether or not the deprivation is inflicted upon everyone else. Undoubtedly deprivations inflicted upon all prisoners are, as a policy matter, of greater concern than deprivations inflicted upon particular prisoners, but we see no basis whatever for saying that the one is a “condition of confinement” and the other is not — much less that the one constitutes “punishment” and the other does not.... Id. at n. 1.
The majority’s attempt to resurrect the same invalid distinction in order to isolate pretrial detainees’ claims based upon “specific acts or omissions directed at individual prisoners” and place them under the aegis of *653 the Eighth Amendment “deliberate indifference” standard rather than under the broader protection of the Due Process Clause is clearly inconsistent with the Supreme Court’s cases. The Supreme Court’s decisions repeatedly indicate that convicted inmates have less protections and rights than pretrial detainees and other unconvicted persons in the state’s custody. Certainly, the ambit of the state’s duty to protect pretrial detainees from any punishment is greater than that of its duty to protect convicted inmates only from cruel or unusual punishment. Bell v. Wolfish, supra. “Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.” Youngberg v. Romeo, 457 U.S. 307, 321-322, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982). See also, Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Contrary to the majority’s suggestion, the Supreme Court’s decision in DeShaney v. Winnebago County DSS, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) does not undermine any of these authorities. In DeShaney the Court merely distinguished Youngberg v. Romeo, supra, holding that the state had no duty, under the Due Process Clause, to protect a child against abuse by his father, even though the state knew that the child faced danger of such abuse, where (1) the child was not in the state’s custody, and (2) the state played no part in creation of the danger, nor did the state do anything to render the child any more vulnerable to such danger.
Therefore, the majority departs radically from the Supreme Court’s pretrial detainee precedents by refusing to apply the Mendoza-Martinez factors, even as abbreviated and refined by Bell v. Wolfish. Even if the majority deems these factors to be too cumbersome for felicitous application in detainee failure to protect or to medically treat eases, there is no reason to relegate innocent detainees and other wards of the state to protection only against cruel or unusual punishment as measured by the criminal recklessness or “deliberate indifference” standard defined by Farmer v. Brennan for cruel and unusual punishment cases. If a short hand version of the Mendoza-Martinez and Bell tests must be devised for failure to protect or medically treat cases, I do not understand why the civil recklessness standard, see Farmer v. Brennan, — U.S. -, -, 114 S.Ct. 1970, 1978-79, and authorities cited, or even a gross negligence standard would not be appropriate, so long as all relevant legitimate governmental objectives are also taken into consideration. Either test would accord to unconvicted detainees the greater respect for their rights due them as innocent persons while insulating jail officials from liability for their ordinary negligent or inadvertent acts or omissions. Application of the criminal recklessness or deliberate indifference test to pretrial detainees’ claims will permit the state to punish detainees in violation of Supreme Court decisions, so long as the punishment is not cruel or unusual.
2.
According to the majority’s holding, the claims of individual pretrial detainees based on a jail official’s failure to protect them from harm or to provide them with medical services shall be governed by the same Eighth Amendment cruel or unusual punishment-deliberate indifference rubric defined by Farmer v. Brennan, — U.S. -, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) for the adjudication of similar claims by convicted inmates. I write further only out of concern that the majority opinion may not explicate the Farmer v. Brennan decision sufficiently to alert the trial bench and bar of its requirements that have now been made applicable to pretrial detainee cases in this circuit.
Farmer v. Brennan held that a prison official may be held liable for denying to a convicted prisoner humane conditions of confinement, under the rule that the official’s deliberate indifference to substantial risk of serious harm to the prisoner violates the cruel and unusual punishments clause of the Eighth Amendment, if the official (1) is subjectively aware that the prisoner faces such *654 risk, Id. at -, 114 S.Ct. at 1975; and (2) disregards that risk by failing to take reasonable measures to abate the risk. Id. at -, 114 S.Ct. at 1976. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Id. at -, 114 S.Ct. at 1981. For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant official had actual knowledge of the risk. Id. at -, 114 S.Ct. at 1981-82. However, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Id. at -, 114 S.Ct. at 1982. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. Id. at -, 114 S.Ct. at 1982-83. As Justice Blackmun observed in his concurring opinion, “Under the Court’s decision today, prison officials may be held liable for failure to remedy a risk so obvious and substantial that the officials must have known about it....” Id. at -, 114 S.Ct. at 1986.