HOLTZMAN ET AL. *v.* SCHLESINGER ET AL.

No. A–150.   Decided August 4, 1973

MR. JUSTICE DOUGLAS, Circuit Justice.

My Brother MARSHALL, after a hearing, denied this application which in effect means that the decision of the District Court holding that the bombing of Cambodia is unconstitutional is stayed pending hearing on the merits before the Court of Appeals.

An application for stay denied by one Justice may be made to another.   We do not, however, encourage the practice; and when the Term starts, the Justices all being in Washington, D. C., the practice is to refer the second application to the entire Court.   That is the desirable practice to discourage "shopping around."

When the Court is in recess that practice cannot be followed, for the Justices are scattered.   Yakima, Washington, where I have scheduled the hearing, is nearly 3,000 miles from Washington, D. C.   Group action by all Members is therefore impossible.

I approached this decision, however, with deliberation, realizing that, while the judgment of my Brother MARSHALL is not binding on me, it is one to which I pay the greatest deference.

My Brother MARSHALL accurately points out that if the foreign policy goals of this Government are to be weighed the Judiciary is probably the least qualified branch to weigh them. He also states that if stays by judicial officers in cases of this kind are to be vacated the circumstances must be "exceptional." I agree with those premises, and I respect the views of those who share my Brother MARSHALL's predilections.

But this case in its stark realities involves the grim consequences of a capital case. The classic capital case is whether Mr. Lew, Mr. Low, or Mr. Lucas should die. The present case involves whether Mr. X (an unknown person or persons) should die. No one knows who they are. They may be Cambodian farmers whose only "sin" is a desire for socialized medicine to alleviate the suffering of their families and neighbors. Or Mr. X may be the American pilot or navigator who drops a ton of bombs on a Cambodian village. The upshot is that we know that someone is about to die.

Since that is true I see no reason to balance the equities and consider the harm to our foreign policy if one or a thousand more bombs do not drop. The reason is that we live under the Constitution and in Art. I, § 8, cl. 11, it gives to Congress the power to "declare War." The basic question on the merits is whether Congress, within the meaning of Art. I, § 8, cl. 11, has "declared war" in Cambodia.

It has become popular to think the President has that power to declare war. But there is not a word in the Constitution that grants that power to him. It runs only to Congress.

The Court in the *Prize Cases* said:

"By the Constitution, Congress alone has the power to declare a national or foreign war. . . . The Constitution confers on the President the whole Executive power. . . . He has no power to initiate or declare a war either against a foreign nation or a domestic State. . . .

"If a war be made by invasion of a foreign nation, the President is not only authorized but bound to resist force by force. He does not initiate the war, but is bound to accept the challenge without waiting for any special legislative authority." 2 Black 635, 668.

The question of justiciability does not seem substantial. In the *Prize Cases,* decided in 1863, the Court entertained a complaint involving the constitutionality of the Civil War. In my time we held that President Truman in the undeclared Korean war had no power to seize the steel mills in order to increase war production. *Youngstown Sheet & Tube Co.* v. *Sawyer,* 343 U. S. 579. The *Prize Cases* and the *Youngstown* case involved the seizure of property. But the Government conceded on oral argument that property is no more important than life under our Constitution. Our Fifth Amendment which curtails federal power under the Due Process Clause protects "life, liberty, or property" in that order. Property is important, but if President Truman could not seize it in violation of the Constitution I do not see how any President can take "life" in violation of the Constitution.

As to "standing," which my Brother MARSHALL correctly states is an issue, there seems to be no substantial question that a taxpayer at one time had no standing to complain of the lawless actions of his Government. But that rule has been modified. In *Flast* v. *Cohen,* 392 U. S. 83, 106, the Court held that a taxpayer could invoke

"federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power." That case involved alleged violations of the Establishment Clause of the First Amendment. The present case involves Art. I, § 8, cl. 11, which gives Congress and not the President the power to "declare War."

If applicants are correct on the merits they have standing as taxpayers. The case in that posture is in the class of those where standing and the merits are inextricably intertwined. I see no difference, constitutionally speaking, between the standing in *Flast* and the standing in the present case for our Cambodian caper contested as an unconstitutional exercise of presidential power.

When a stay in a capital case is before us, we do not rule on guilt or innocence. A decision on the merits follows and does not precede the stay. If there is doubt whether due process has been followed in the procedures, the stay is granted because death is irrevocable. By the same token I do not sit today to determine whether the bombing of Cambodia is constitutional. Some say it is merely an extension of the "war" in Vietnam, a "war" which the Second Circuit has held in *Berk* v. *Laird,* 429 F. 2d 302, to raise a "political" question, not a justiciable one. I have had serious doubts about the correctness of that decision, but our Court has never passed on the question authoritatively. I have expressed my doubts on the merits in various opinions dissenting from denial of certiorari.† But even if the "war" in Vietnam were

---

†*Sarnoff* v. *Shultz,* 409 U. S. 929; *DaCosta* v. *Laird,* 405 U. S. 979; *Massachusetts* v. *Laird,* 400 U. S. 886; *McArthur* v. *Clifford,* 393 U. S. 1002; *Hart* v. *United States,* 391 U. S. 956; *Holmes* v. *United States,* 391 U. S. 936; *Mora* v. *McNamara,* 389 U. S. 934, 935; *Mitchell* v. *United States,* 386 U. S. 972.

assumed to be a constitutional one, the Cambodian bombing is quite a different affair. Certainly Congress did not in terms declare war against Cambodia and there is no one so reckless to say that the Cambodian forces are an imminent and perilous threat to our shores. The briefs are replete with references to recent Acts of Congress which, to avoid a presidential veto, were passed to make clear—as I read them—that no bombing of Cambodia was to be financed by appropriated funds after August 15, 1973. Arguably, that is quite different from saying that Congress has declared war in Cambodia for a limited purpose and only up to and not beyond August 15, 1973. If the acts in question are so construed the result would be, as the District Court said, that the number of votes needed to sustain a presidential veto—one-third plus one—would be all that was needed to bring into operation the new and awesome power of a President to declare war. The merits of the present controversy are therefore, to say the least, substantial, since denial of the application before me would catapult our airmen as well as Cambodian peasants into the death zone. I do what I think any judge would do in a capital case—vacate the stay entered by the Court of Appeals.

*It is so ordered.*