# CITY OF REVERE *v.* MASSACHUSETTS GENERAL HOSPITAL

No. 82–63.   Argued February 28, 1983—Decided June 27, 1983

*Ira H. Zaleznik* argued the cause for petitioner. With him on the briefs was *Valerie L. Pawson.*

*Michael Broad* argued the cause for respondent. With him on the brief was *Ernest M. Haddad.**

JUSTICE BLACKMUN delivered the opinion of the Court.

The issue in this case is whether a municipality's constitutional duty to obtain necessary medical care for a person injured by the municipality's police in the performance of their duties includes a corresponding duty to compensate the provider of that medical care.

I

On September 20, 1978, members of the police force of petitioner city of Revere, Mass., responded to a report of a breaking and entering in progress. At the scene they sought to detain a man named Patrick M. Kivlin, who attempted to flee. When repeated commands to stop and a warning shot failed to halt Kivlin's flight, an officer fired at Kivlin and wounded him. The officers summoned a private ambulance. It took Kivlin, accompanied by one officer, to the emergency room of respondent Massachusetts General

---

*Briefs of *amici curiae* urging reversal were filed by *Paul R. Devin* for the City of Fitchburg et al.; and by *Daniel J. Popeo, Paul D. Kamenar,* and *Nicholas E. Calio* for the Washington Legal Foundation.

*William T. McGrail* filed a brief for the Massachusetts Hospital Association, Inc., as *amicus curiae* urging affirmance.

*Charles S. Sims, Burt Neuborne,* and *John Reinstein* filed a brief for the American Civil Liberties Union et al. as *amici curiae.*

Hospital (MGH) in Boston.[1]  Kivlin was hospitalized at MGH from September 20 until September 29.  Upon his release, Revere police served him with an arrest warrant that had been issued on September 26.  Kivlin was arraigned and released on his own recognizance.

On October 18, MGH sent the Chief of Police of Revere a bill for $7,948.50 for its services to Kivlin.  The Chief responded immediately by a letter denying responsibility for the bill.  On October 27, Kivlin returned to MGH for further treatment.  He was released on November 10; the bill for services rendered during this second stay was $5,360.41.[2]

In January 1979, MGH sued Revere in state court to recover the full cost of its hospital services rendered to Kivlin. The Superior Court for the County of Suffolk dismissed the complaint.  MGH appealed, and the Supreme Judicial Court of Massachusetts transferred the case to its own docket.

The Supreme Judicial Court reversed in part, holding that "the constitutional prohibition against cruel and unusual punishment, embodied in the Eighth Amendment to the United States Constitution [as applied to the States through the Fourteenth Amendment], requires that Revere be liable to the hospital for the medical services rendered to Kivlin during his first stay at the hospital."  385 Mass. 772, 774, 434 N. E. 2d 185, 186 (1982).  The court apparently believed that such a rule was needed to ensure that persons in police custody receive necessary medical attention.[3]  In view of this rather novel Eighth Amendment approach and the impor-

---

[1] The city of Revere apparently has no municipal hospital or even a jail of its own.  See App. 14.

[2] Nothing in the record indicates that MGH ever tried to obtain payment from Kivlin.

[3] Because it ruled that Kivlin was no longer in custody when he returned to MGH on October 27, the court concluded that Revere was not liable to MGH for the services rendered during the second hospitalization.  385 Mass., at 779–780, 434 N. E. 2d, at 189–190.  That issue is not before us.

tance of delineating governmental responsibility in a situation of this kind, we granted certiorari. 459 U. S. 820 (1982).

## II

We first address two preliminary issues.

### A

MGH suggests that we lack jurisdiction to decide this case because the state-court decision rests on an adequate and independent state ground. The Supreme Judicial Court's opinion, however, stated unequivocally that state contract law provided no basis for ordering Revere to pay MGH for the hospital services rendered to Kivlin, 385 Mass., at 774, 434 N. E. 2d, at 186, and that MGH had not invoked the Commonwealth's Constitution in support of its claim, id., at 776, n. 6, 434 N. E. 2d, at 188, n. 6. In a section of its opinion entitled "Eighth Amendment," the court premised Revere's liability squarely on the Federal Constitution.[4] Because the court's decision was based on an interpretation of federal law, we have jurisdiction notwithstanding the fact that the same decision, had it rested on state law, would be unreviewable here. See Oregon v. Hass, 420 U. S. 714, 719, and n. 4 (1975).

### B

The parties submit various arguments concerning MGH's "standing" to raise its constitutional claim in this Court.

---

[4] The court stated:

"The hospital argues that the prohibition against deliberate indifference to the medical needs of prisoners contained implicitly in the Eighth Amendment, Estelle v. Gamble, 429 U. S. 97 (1976), compels a government agency or division responsible for supplying those medical needs to pay for them. We agree." Id., at 776, 434 N. E. 2d, at 187–188 (footnotes omitted).

Later, the court observed that inadequate funding, and the fact that payment would violate state law, were irrelevant: the Eighth Amendment required such payment, and prevailed over contrary state law. Id., at 779, 434 N. E. 2d, at 189.

MGH, however, clearly has standing in the Article III sense: it performed services for which it has not been paid, and through this action it seeks to redress its economic loss directly.

Moreover, prudential reasons for refusing to permit a litigant to assert the constitutional rights of a third party are much weaker here than they were in *Craig* v. *Boren*, 429 U. S. 190, 193–194 (1976), where the Court permitted a seller of beer to challenge a statute prohibiting the sale of beer to males, but not to females, between the ages of 18 and 21. In this case, as in *Craig*, the plaintiff's assertion of *jus tertii* was not contested in the lower court, see 385 Mass., at 776–777, n. 7, 434 N. E. 2d, at 188, n. 7, and that court entertained the constitutional claim on its merits. Unlike *Craig*, this case arose in state court and the plaintiff, MGH, prevailed. The Supreme Judicial Court, of course, is not bound by the prudential limitations on *jus tertii* that apply to federal courts. The consequence of holding that MGH may not assert the rights of a third party (Kivlin) in this Court, therefore, would be to dismiss the writ of certiorari, leaving intact the state court's judgment in favor of MGH, the purportedly improper representative of the third party's constitutional rights. See *Doremus* v. *Board of Education*, 342 U. S. 429, 434–435 (1952). In these circumstances, invoking prudential limitations on MGH's assertion of *jus tertii* would "serve no functional purpose." *Craig* v. *Boren*, 429 U. S., at 194.[5]

### III

### A

The Eighth Amendment's proscription of cruel and unusual punishments is violated by "deliberate indifference to serious

---

[5] In addition, we could not resolve the question whether MGH has third-party standing without addressing the constitutional issue. To a significant degree, the case "is in the class of those where standing and the merits are inextricably intertwined." *Holtzman* v. *Schlesinger*, 414 U. S. 1316, 1319 (1973) (Douglas, J., in chambers). Both the standing question and the merits depend in part on whether injured suspects will be deprived of

medical needs of prisoners." *Estelle* v. *Gamble,* 429 U. S. 97, 104 (1976). As MGH acknowledges, Brief for Respondent 3, on the facts of this case the relevant constitutional provision is not the Eighth Amendment but is, instead, the Due Process Clause of the Fourteenth Amendment. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham* v. *Wright,* 430 U. S. 651, 671–672, n. 40 (1977); see *Bell* v. *Wolfish,* 441 U. S. 520, 535, n. 16 (1979). Because there had been no formal adjudication of guilt against Kivlin at the time he required medical care, the Eighth Amendment has no application.

### B

The Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to persons, such as Kivlin, who have been injured while being apprehended by the police. In fact, the due process rights of a person in Kivlin's situation are at least as great as the Eighth Amendment protections available to a convicted prisoner. See *Bell* v. *Wolfish,* 441 U. S., at 535, n. 16, 545.[6] We need not define, in this case, Revere's due process obligation to pretrial detainees or to other persons in its care who require medical attention. See *Youngberg* v.

---

their constitutional right to necessary medical care unless the governmental entity is required to pay hospitals for their services.

[6] The due process issue, raised by respondent as an alternative ground in support of the judgment, has been fully briefed and is properly before us. See *Dandridge* v. *Williams,* 397 U. S. 471, 475–476, n. 6 (1970). There is no reason to believe, moreover, that the Supreme Judicial Court's analysis of the rights of pretrial detainees would be any different under the Due Process Clause. No factual issues are in dispute, and there would be little point in remanding the case merely to allow the Supreme Judicial Court to reconsider its holding under the relevant constitutional provision.

*Romeo*, 457 U. S. 307, 312, n. 11 (1982); *Norris* v. *Frame*, 585 F. 2d 1183, 1187 (CA3 1978); *Loe* v. *Armistead*, 582 F. 2d 1291 (CA4 1978), cert. denied *sub nom. Moffitt* v. *Loe*, 446 U. S. 928 (1980). Whatever the standard may be, Revere fulfilled its constitutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury. And as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.

If, of course, the governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay. There are, however, other means by which the entity could meet its obligation. Many hospitals are subject to federal or state laws that require them to provide care to indigents. Hospitals receiving federal grant money under the Hill-Burton Act, for example, must supply a reasonable amount of free care to indigents. See 42 U. S. C. § 291c(e). In the Commonwealth of Massachusetts now, any hospital with an emergency facility must provide emergency services regardless of the patient's ability to pay. Mass. Gen. Laws Ann., ch. 111, § 70E*(k)* (West Supp. 1983–1984), added by 1979 Mass. Acts, ch. 214, and amended by 1979 Mass. Acts, ch. 720. Refusal to provide treatment would subject the hospital to malpractice liability. § 70E. The governmental entity also may be able to satisfy its duty by operating its own hospital, or, possibly, by imposing on the willingness of hospitals and physicians to treat the sick regardless of the individual patient's ability to pay.[7]

In short, the injured detainee's constitutional right is to receive the needed medical treatment; how the city of Revere obtains such treatment is not a federal constitutional ques-

---

[7] Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him.

tion.[8] It is not even certain that mandating government reimbursement of hospitals that treat injured persons in police custody would have the effect of increasing the availability or quality of care. Although such a requirement would serve to eliminate any reluctance on the part of private hospitals to provide treatment, it also might encourage police to take injured detainees to public hospitals, rather than private ones, regardless of their relative distances or ability to furnish particular services.

## IV

For these reasons, the judgment of the Supreme Judicial Court is reversed.

*It is so ordered.*

JUSTICE REHNQUIST, with whom JUSTICE WHITE joins, concurring in part and concurring in the judgment.

I see no reason to decide in this case what requirements the Due Process Clause may impose upon a governmental agency by way of providing medical care to persons who have been injured while being apprehended by the police. As the Court points out, "[w]hatever the standard may be, Revere fulfilled its constitutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury." *Ante,* at 245. The Court's other statements regarding the application of the Due Process Clause in this situation, *ante,* at 244–245 and this page, are therefore unnecessary as well as largely unsupported.

I concur in Parts I, II, III–A, and IV of the Court's opinion.

JUSTICE STEVENS, concurring in the judgment.

This case raises a question of state fiscal policy. If the Mayor of the City of Revere had paid this bill because he had been advised by his attorney, or by the Attorney General of

---

[8] We do not deal here, of course, with possible remedies for a pattern of constitutional violations.

the State, that it was an obligation of the municipality, we would have had no interest in the matter, even if the legal advice had misinterpreted federal law. If the Massachusetts Legislature had passed a statute requiring bills of this character to be paid by the city, the performance of a city's state statutory obligation would give rise to no federal question. That would be true even if the legislative history of the statute made it perfectly clear that every lawmaker who voted for the bill did so because he believed that the Federal Constitution required the State to allocate the cost in this manner.

Because the Supreme Judicial Court of Massachusetts—rather than another branch of state government—invoked the Federal Constitution in imposing an expense on the City of Revere, this Court has the authority to review the decision. But is it a sensible exercise of discretion to wield that authority? I think not. There is "nothing in the Federal Constitution that prohibits a State from giving lawmaking power to its courts." *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U. S. 456, 479 (1981) (STEVENS, J., dissenting). No individual right was violated in this case. The underlying issue of federal law has never before been deemed an issue of national significance. Since, however, the Court did (unwisely in my opinion) grant certiorari, I join its judgment.*

---

*I agree with the Court's substantive analysis of this case, except for its assertion that the Eighth Amendment's prohibition against cruel and unusual punishment would not be violated by the State's imposition of cruel and unusual punishment on a prisoner before he has been convicted of a crime. I adhere to my views that the statements in support of that assertion in *Ingraham* v. *Wright*, 430 U. S. 651 (1977), and *Bell* v. *Wolfish*, 441 U. S. 520 (1979), simply cannot be squared with the text or the purpose of the Eighth Amendment. See *Ingraham, supra*, at 684–692 (WHITE, J., dissenting).