765 F.2d 144
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLARENCE BROWN, SR., ADMINISTRATOR OF THE ESTATE OF CLARENCE
BROWN, JR., DECEASED, ON BEHALF OF THE ESTATE OF
THE NEXT OF KIN, APPELLANT.
v.
PATROLMAN KOMIDAR; PATROLMAN THORNTON; SERGEANT PAPESCH,
DEFENDANTS-APPELLEES.
 NO. 84-3360
 United States Court of Appeals, Sixth Circuit.
 5/7/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: MERRITT, KENNEDY and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this civil rights case against three Cleveland police officers, Clarence Brown, Sr., plaintiff, appeals the district court's order granting defendants' motion for summary judgment on the ground that a genuine factual issue exists whether defendants violated decedent's constitutional rights under the Fourteenth Amendment and 42 U.S.C. Sec. 1983 by showing deliberate indifference to decedent's serious medical needs. We affirm the district court's judgment.
 
 I.
 
 2
 Clarence Brown, Jr., decedent, was fatally struck by a single bullet in a gun battle in Cleveland, Ohio. John Peet, a federal probation officer who was in the neighborhood on unrelated official business, observed decedent fire a gun, go behind a building, and either crouch or fall down behind a wall. Peet found a handgun lying at the top of a stairwell and decedent lying at the bottom of the stairs. He helped plaintiff up the stairs. Peet testified that he examined the decedent, but found no wounds or blood.
 
 
 3
 Defendant, Officer John Papesch, arrived at the scene shortly after the shooting. Officers Komidar and Thornton, the other defendants, arrived slightly after Papesch. Peet, who identified himself as a federal probation officer, gave the officers the revolver and told them what had happened, including the fact that he had examined decedent and found no blood or wounds. The officers state that decedent was incoherent and unable to answer their questions. Officer Papesch testified that he smelled beer on decedent's breath. He states further that a local bartender told him that decedent had been drinking heavily in his bar that day. Papesch decided to take decedent to the local police station for questioning about the gun battle and for possessing a firearm while intoxicated.
 
 
 4
 Emergency medical technicians arrived at the scene approximately five minutes after defendants. Officer Papesch told the technicians that they were not needed since the victim was drunk and the officers had decided to take him in for questioning. Officer Papesch states further that he told the medical technicians to leave the area because there was a potentially unruly crowd of high school students attracted to the scene by the emergency vehicle's flashing lights.
 
 
 5
 Two officers, one on each side of decedent, walked or carried decedent to the patrol car. As the officers drove away, decedent began thrashing about violently. Defendants then decided to take decedent to Euclid General Hospital, the fourth closest hospital to the scene of the gun battle. Defendants testified that they did not notice decedent's wound or any blood on his clothing until after they arrived at the hospital.
 
 
 6
 Decedent died from internal bleeding due to a gunshot wound, approximately 32 minutes after the officers first arrived at the scene. There was a 3/8 inch entrance wound in his abdomen. The bullet had punctured several internal organs and arteries. Decedent also had several superficial abrasions on his face, hip, leg and back.
 
 
 7
 Plaintiff filed this 42 U.S.C. Sec. 1983 action as administrator of decedent's estate. Defendant's motion for summary judgment was granted on the grounds that the evidence presented no factual issue regarding whether defendants were deliberately indifferent to decedent's serious medical needs in turning away the emergency medical technicians or in taking decedent to Euclid General Hospital rather than any one of three hospitals closer to the scene of the gun battle.
 
 II.
 
 8
 Since decedent was in police custody the appropriate standard for judging defendants' conduct is whether it showed deliberate indifference to decedent's serious medical needs. A prisoner has rights under the Eighth Amendment against prison officials or employees who act with deliberate indifference to the prisoner's serious medical needs. Estelle v. Gamble, 427 U.S. 97 (1976). A pre-trial detainee has due process rights under the Fourteenth Amendment which are, in some circumstances, 'at least as great as the Eighth Amendment protections available to a convicted prisoner.' City of Revere v. Massachusetts General Hospital, 103 S.Ct. 2979 (1983). Although this is not an Eighth Amendment case, because decedent was not convicted of a crime, nevertheless defendants' conduct may be judged by the Estelle standard of deliberate indifference.
 
 
 9
 Applying the standard of deliberate indifference to defendant's conduct at the scene of the gun battle, especially in their turning away the emergency medical technicians, we agree with the district court that the evidence does not present a triable issue. Upon arriving at the scene, defendants were informed by Peet, an individual involved in law enforcement and criminal corrections, that he examined decedent and found no blood or wounds. Defendants were not deliberately indifferent to plaintiff's needs in relying on Peet's account of the situation. Defendants looked at decedent and found nothing contradicting Peet's account. To show deliberate indifference, defendants must deny decedent medical assistance when they know such assistance is needed. Arguably, defendants' conduct in failing to notice the bullet wound in decedent's abdomen was negligent. But since this shows carelessness at worst, there is no element of deliberateness present.
 
 
 10
 No eye witness to the events at the scene of the gun battle presented evidence contradicting the defendants' testimony. The testimony of Peet, the only other eye witness to testify, explains and corroborates defendants' account of the situation. There was evidence that decedent was drunk which explains his lying on the ground, muttering incoherently. A growing crowd at the scene contributed to defendants' sence of urgency to defuse the situation by turning the medical technicians away and taking decedent to the police station themselves. Defendants may have exercised poor judgment in acting as they did. But the circumstances do not permit a reasonable inference to anything beyond negligence. See Jackson v. City of Joliet, 715 F.2d 1200 (7th Cir. 1983). In order to infer that defendants acted with deliberate indifference, it is necessary to posit additional facts which simply are not present in this case, such as, decedent asking and being denied medical treatment or the existence of obvious wounds. Since there is no evidence of such additional facts, it is impossible to infer defendants were deliberately indifferent to decedent's serious medical needs. Therefore, there is no factual issue to be resolved by a trial and summary judgment is appropriate.
 
 
 11
 Plaintiff also contends that defendants showed deliberate indifference once they decided to take decedent to a hospital by not going to one of three hospitals closer to the scene of the gun battle. We disagree.
 
 
 12
 Upon deciding to take decedent to a hospital, defendants drove speedily and directly to Euclid General Hospital. Until they reached the hospital, they were unaware of the nature or extent of decedent's injuries. The fact that defendants could have taken decedent to a closer hospital shows, at most, that defendants used poor judgment in choosing Euclid General Hospital, not that they deliberately delayed medical treatment. Since no reasonable inference can be drawn that defendants were deliberately indifferent to decedent's serious medical needs by choosing the fourth closest hospital, summary judgment is appropriate in this matter also.
 
 
 13
 Since the evidence does not allow a reasonable inference that defendants, in this entire incident, acted with deliberate indifference to decedent's serious medical needs, the district court properly granted their motion for summary judgment.
 
 
 14
 Accordingly, the district court's judgment is affirmed.
 
 
 15
 MERRITT, Circuit Judge, dissenting.
 
 
 16
 In affirming the District Court's order granting defendants' motion for summary judgment, the Court ignores certain objective features of the situation which permits a reasonable inference that defendants acted with deliberate indifference to decedent's serious medical needs.
 
 
 17
 First, upon arriving at the scene of the gun battle, defendants found decedent lying on the ground near a handgun, muttering incoherently. Peet, a reliable source, informed defendants that just moments earlier he observed decedent fire his gun, run behind a building and fall to the ground. Additionally, Peet told defendants that he had found decedent at the bottom of a stairwell. The natural inference here is that decedent was shot or injured. Given the totality of these circumstances, the fact that decedent may also have been drunk supports rather than explains away his serious need for medical attention. A reasonable juror could conclude from these objective facts that defendants were deliberately indifferent to decedent's serious medical needs by turning away the emergency medical technicians.
 
 
 18
 Additionally, decedent had a 3/8 of an inch bullet wound in his abdomen. The coroner's report and photographs indicate that there were blood stains on decedent's clothing. Decedent bled to death in thirty-two minutes from the time defendants arrived at the scene. These facts permit a reasonable inference that defendants were deliberately indifferent to decedent's serious medical needs.
 
 
 19
 Lastly, defendants' objective behavior in immediately deciding to take decedent to the hospital when he became violent suggests that his wounds were more obvious than defendants claim. Their behavior in this regard is inexplicable had they truly believed decedent was not in need of medical attention earlier. If Brown was merely drunk the officers should have subdued and restrained him. Taking him to the hospital when he became violent, 'minutes after' (A-48) they left the scene, makes sense only if they already knew that Brown was wounded or injuried. Consequently, a reasonable juror could infer from defendants' behavior in this regard that earlier defendants had been deliberately indifferent to decedent's serious medical needs.
 
 
 20
 Since there are several instances supporting a reasonable inference that defendants violated decedent's rights to due process under the Fourteenth Amendment by showing deliberate indifference to his serious medical needs, the summary judgment was inappropriate. Thus, the District Court's judgment should be reversed.