Charles Laverne SINGLETON *v.* Larry NORRIS, Director,
Arkansas Department of Correction

CR 98-218                                          992 S.W.2d 768

Supreme Court of Arkansas
Opinion delivered June 17, 1999

[Petitions for rehearing denied July 15, 1999.*]

* *Reporter's note*: Both appellant and appellee filed petitions for rehearing.

*Jeff Rosenzweig*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Todd L. Newton*, Ass't Att'y Gen., and *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. The primary legal issue presented in this case is whether the State may mandatorily administer antipsychotic medication to a condemned prisoner, in order to keep him from being a danger to himself and others, when a collateral effect of that medication is to render him competent to understand the nature and reason for his execution.

Appellant, Charles Singleton, was sentenced to death in 1979 for the brutal murder of Mary Lou York. He was treated for psychiatric problems in prison for years. In 1997, he voluntarily ceased taking antipsychotic medication. He again became psychotic, according to his treating psychiatrist. In August of 1997, the Medication Review Panel agreed with his psychiatrist's request to medicate him involuntarily. While under the regimen of involuntary medication, appellant lost his last round of appeals. Governor Mike Huckabee set an execution date of March 11,

1998. The Department of Correction continued to treat appellant with involuntary medication.

Appellant filed, in Jefferson County Circuit Court, a complaint and petition for declaratory judgment and petition for issuance of all writs and orders necessary to enforce declaratory judgment. Through those filings, appellant sought to prohibit his execution as long as his competency to be executed was being obtained through involuntary medication. He also sought a stay of execution in the trial court and this Court. On March 9, 1998, we granted a stay of execution to permit him to litigate the issue. After a hearing, the trial court denied appellant's petition for declaratory judgment. From the denial of relief, appellant now brings this appeal.

Appellant asserts that the State cannot involuntarily medicate him into competency and then execute him; appellant asserts that the trial court erred in finding that the State's involuntary medication of appellant was appropriate. Appellant contends that making him artificially competent to be executed by the administration of antipsychotic drugs violates his federal and state constitutional rights of due process of law, protection against cruel and unusual punishment, protection against unreasonable searches and seizures, in that it would violate the rights of privacy and autonomy protected by the guarantees of the Fourth Amendment and Art. 2, § 15, of the Arkansas Constitution, and Ark. Code Ann. § 16-90-506.

Further, appellant has not contested the appropriateness of the involuntary administration of medication under *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028 (1990) (holding that medicating an inmate against his will in order to protect him from himself and others is legitimate), except to assert that to the extent the involuntary administration of medication might have been appropriate when it was originally ordered in August of 1997, following a *Harper* evaluation conducted by the Medication Review Panel, such administration ceased to be valid as a medical necessity for appellant's own good when his stay of execution was dissolved and an execution date was proclaimed. We disagree with appellant on all points and affirm the trial court.

■ ■ Regardless of whether an execution date was set, the involuntary administration of medication was appropriate under *Washington v. Harper, supra,* for appellant's own good and for the security of the institution in which he is incarcerated; it remains appropriate as long as appellant is alive and is either a potential danger to himself *or others.* This Court must look to the intent of the State in its decision to involuntarily medicate appellant. The State has a due process obligation to provide appropriate medical care to persons in its custody. *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979 (1983); *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250 (1988).

■ Here, the State contends that the medication is necessary for appellant's own good and for the safety of others. The intent of the State was not to medicate him in order to make him competent to be executed. Further, appellant has not contested the appropriateness of the involuntary administration of medication under *Washington v. Harper.*

In its order, the trial court made several findings of fact and law. Appellant asserts that some of the trial court's findings are erroneous to the validity of the decision. In particular, appellant asserts that the trial court's finding that "it had not been *conclusively* proven to this court that Singleton is incompetent to be executed without his medication" (emphasis added), contains an erroneous formulation of the burden of proof by using the word "conclusively." We disagree.

■ The trial court found that at the time of the hearing and as stipulated, Singleton was competent to be executed. Although a *Ford* hearing was never conducted while appellant was *off* the medication, appellant does not contest that at the time of the hearing he was competent to be executed under the *Ford v. Wainwright* standard. *See Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595 (1986) (holding that the Eighth Amendment prohibits the execution of an insane person whose mental illness prevents him from comprehending the reasons for the penalty or its implications). However, appellant asserts that his competency is a result of the involuntary medication and that being required to "conclusively" prove that he is *incompetent* to be executed *without* the med-

ication requires a much greater burden of proof than is appropriate under the law. We hold that because appellant presented no evidence whatsoever as to his incompetency, the use of the term "conclusively" by the trial court was inconsequential.

■ Appellant had several opportunities to request a *Ford* hearing in order to have his competency evaluated while off the medication, yet he chose not to. The United States District Court for the Eastern District of Arkansas, Garnett Thomas Eisele, J., expressly offered appellant a *Ford* hearing in *Singleton v. Norris*, PB-C-93-425 (E.D. Ark. July 25, 1995) (*Norris*), which appellant rejected. In the trial court below, appellant did not raise the issue of the *Ford* hearing. Finally, a *Ford* hearing was not even requested in the instant appeal. We hold that appellant has, therefore, failed to offer proof of his incompetence.

■ ■ As appellant has neither contested *Washington v. Harper* nor taken an appeal from same, we hold that the State had a burden to medicate appellant under *Harper*, that said burden continues, and that the State has met and is meeting its burden. We further hold that because appellant never requested a *Ford* hearing while off the medication, *Washington v. Harper* is controlling, and the collateral effect of the involuntary medication rendering him competent to understand the nature and reason for his execution is therefore no violation of any due process law. We affirm the trial court.

Affirmed.

THORNTON, J., dissents.

R AY THORNTON, Justice, dissenting. For hundreds of years, it has been a fundamental law that an insane person cannot be subjected to the death penalty. In *Ford v. Wainwright*, 477 U.S. 399 (1986), the United States Supreme Court made clear that this fundamental law was secured by the Eighth Amendment. The Supreme Court stated "this Court is compelled to conclude that the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Id.*

In 1990, the United States Supreme Court held that a mentally ill prisoner possessed a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs. *Washington v. Harper*, 494 U.S. 210 (1990). However, the Court held that "the Due Process Clause permits the state to treat a prison inmate who has a serious illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others *and the treatment is in the inmate's medical interest.*" *Id.* (emphasis supplied).

By today's decision, the majority adopts the view that forcing Mr. Singleton to take antipsychotic drugs meets the test imposed by *Harper* that such treatment must be "in the inmate's medical interest." *Id.*

I disagree that forcible medication that enables a mentally ill prisoner to become competent to be executed can be in the inmate's medical interest, and I respectfully dissent.