UNITED STATES of America,

v.

Trevor Constantine WALLEN.

No. JFM–01–0602.

United States District Court,
D. Maryland.

Dec. 21, 2001.

Jeffrey E. Risberg, Office of the Federal Public Defender, Baltimore, MD, for Trevor Constantine Wallen.

James G. Pyne, Assistant United States Attorney, Thomas M. DiBiagio, Office of the US Attorney, Baltimore, MD, for U.S.

### MEMORANDUM AND ORDER

BREDAR, United States Magistrate Judge.

Trevor Constantine Wallen, the Defendant, stands charged with importation of cocaine in violation of 21 U.S.C. §§ 952. He first appeared in this Court on November 26, 2001, and upon the uncontested motion of the Government was ordered detained without bail in the custody of the U.S. Marshal, pursuant to 18 U.S.C. § 3141, *et. seq.* (Paper No. 5). When ordering the Defendant's detention, Magistrate Judge Beth P. Gesner of this Court simultaneously notified the Marshal that the Defendant had numerous medical problems, including high blood pressure,

depression, and the aftereffects of removal of a brain tumor, and that he regularly required various prescribed medications. (Paper No. 6).[1] Complying with the detention order, the Marshal confined the Defendant at the Maryland Correctional Adjustment Center (MCAC). Now ready for resolution by the Court is the Defendant's oral request that he be held at a detention facility other than MCAC.[2]

On December 14, 2001, the Defendant appeared for arraignment. At that time he complained, personally and through counsel, that contrary to Judge Gesner's order he had not been appropriately medicated during the preceding week while in the Marshal's custody. He reported that his medication was not delivered at the times prescribed and instead only in a single batch once per day. He also reported that on several days he did not receive some or all of the medicines prescribed for his various medical conditions. Most disturbingly, he alleged that on December 9, in relation to medication errors, he lost consciousness and collapsed in his cell at MCAC. He further claimed that he required emergency transportation to the University of Maryland Hospital and that he remained an inpatient there for three days.

When his complaints were first presented on December 14, the Defendant's status and circumstances gave rise to credibility concerns. Inmate claims of poor jail conditions are heard with some frequency—some, upon investigation, are determined to be unfounded or to have minimal substance. In this case the grievances were sufficiently detailed as to cause the Court to require the Marshal to produce the

Defendant's jail medication record at a second hearing scheduled for later that same day.

At the subsequent hearing the Court was provided a document (Court Exhibit No. 1) that seemed to indicate that the Defendant received all of his prescribed medications in the mornings and evenings while in custody between December 6 and December 13. Significantly, this document seemed to indicate that all medications had been dispensed to the Defendant *at* MCAC. The Marshals confirmed, however, that between December 9 and December 12 the Defendant was actually housed at the University of Maryland Hospital and, therefore, contrary to the MCAC medical record, he *could not* have received his medication at MCAC on those dates.

With developing doubts about the veracity of the medical record keepers at MCAC (and with a derivative concern about the quality of care being delivered by medical providers who apparently did not keep accurate medication records), the Court temporarily granted the Defendant's oral motion for relief and ordered that he be held in an infirmary or a hospital and not at MCAC until a more exhaustive hearing could be conducted.

The more in-depth hearing was conducted on December 18, 2001. David Nelson Thompson, a regional manager for Prison Health Services, Inc., was the government's single witness. Mr. Thompson testified that his company has a contract with the State of Maryland to provide health care services to the many inmates detained in the Baltimore region of the state's Department of Corrections. The Court takes judicial notice of the lack of a federal

1. The Defendant reports that he is a British subject who resides in Jamaica and that he is 56 years of age.

2. Under normal circumstances it is for the Marshal to determine the *place* of detention. The Court's only role is to enforce Constitutional safeguards relating to conditions of confinement, access to legal counsel, etc.

pretrial detention facility to serve the Baltimore/Washington metropolitan area and the four busy U.S. District Courthouses in the region,[3] and that the United States Marshal's Service has been forced to contract with the Maryland Department of Corrections (and with county sheriff's departments scattered from Northern Neck, Virginia to Maryland's western-most counties) to hold those persons ordered detained by judges of this Court. Under the intergovernmental agreement between the Marshal's Service and the State of Maryland, federal pretrial detainees are held at MCAC, and Mr. Thompson explained that they receive their health care from the same provider that serves the state prisoners held in that facility. Thus, under the Marshal's direction federal pretrial detainees held at MCAC who require medical care become patients of Prison Health Services, Inc.

Through Mr. Thompson the government presented a more complete version of the medication chart submitted at the hearing on December 14 (Government Exhibit No. 1).[4]

Mr. Thompson's testimony, together with the two versions of the medication chart in evidence, make clear that the dispensing of medication to the Defendant during the period December 6–13 was not correctly recorded. Multiple discrepancies and omissions were revealed during questioning of Mr. Thompson by both government counsel and the Defendant's attorney. For instance, it is

undisputed that the Defendant was housed for the entire twenty-four hour period on December 10, 2001, at the University of Maryland Hospital, receiving care after his collapse the preceding afternoon. Nonetheless, the MCAC medication record indicates that the Defendant received *at MCAC* all five medications then prescribed for him, some being delivered to him in the morning and others in the afternoon.[5] Mr. Thompson clarified one or two other discrepancies in favor of those responsible for the Defendant's health care, but for the most part he was unable to satisfactorily explain the many mistakes in the medication record. Moreover, he testified that notations on medication records are not made contemporaneously with the delivery of medication but rather are made later at a different site after all medications are dispensed. These records—recording whether an inmate received or did not receive prescribed medication—are compiled, he testified, by examining the packages left over after delivery. In short, it is assumed that an inmate received his medication unless his package is left over. Fifty to seventy-five inmates at MCAC receive medication daily, according to the witness.

█ Mr. Thompson's explanation does not account for how the person delivering the packages keeps track of the information contained on the second page of Government Exhibit 1, which purports to explain why a particular inmate did not

---

3. U.S. Courthouses are located in Baltimore, Maryland; Greenbelt, Maryland; Washington, D.C.; and in Alexandria, Virginia.

4. Specifically, a second page was provided and the first page had been altered from the version initially presented to the Court. In sum, the evidence had been both updated and slightly reworked.

5. Under the distressingly informal method of recording the delivery of medication to inmates, a circle around a pharmacy technician's initials in a given date block signifies that, although ordered by a physician, a given dosage was not successfully delivered to the inmate. Entries for December 10 are not circled, indicating all dosages were delivered as ordered.

receive his medication. One must wonder how without contemporaneous record keeping a technician could reliably remember *why* a given medication was not delivered. Did the inmate refuse the medicine? Was the cell empty? Had the inmate been taken to the law library? Had he been admitted to the hospital and presumably been medicated there? In some instances the record (Government Exhibit No. 1) reflects that medication was ordered but not dispensed, and an explanation is provided. The reliability of that explanation is subject to serious question. And, in other instances there is simply no reason given as to why a particular dosage was not delivered.

Viewing this situation charitably, the method of documenting the dispensing of medication is unreliable and systemically flawed—viewing the situation less charitably, the record keeping may even be trumped up. For the period December 6–9, the medication record indicates that the Defendant received his medication exactly as ordered. But the Defendant reports, credibly in the eyes of the Court, that during this time at MCAC his medication was provided irregularly and incompletely, and his collapse and subsequent hospitalization on December 9 tends to corroborate his testimony.

At the conclusion of the hearing, counsel for the Defendant urged the Court not to return his client to MCAC, and counsel for the government, concurring that the discrepancies in the medication record were inexplicable, agreed that MCAC would not be an appropriate placement in light of the evidence presented.

■ Pretrial detainees suffering from illness or injury are constitutionally entitled to receive needed medical treatment and may not be subjected to any form of punishment, since they have not yet been adjudicated guilty of a crime. *Gray v. Farley,* 13 F.3d 142, 146 (4th Cir.1993); *see City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244–45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). A pretrial detainee makes out a due process violation if he shows " 'deliberate indifference to serious medical needs.' " *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988) (quoting *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). If the Constitution forbids the custodians of pretrial detainees from being deliberately indifferent to detainees' legitimate and apparent needs for medical care, then of necessity it forbids deliberate indifference in the management, dispensing and documentation of prescribed drug therapy, a critical component of overall medical care.

■ While this is not an action brought pursuant to 42 U.S.C. § 1983 or a habeas corpus petition filed under 28 U.S.C. § 2241, the Court is gravely concerned that the Defendant's Fifth Amendment rights may have been violated and, more importantly, that those rights may be at continued risk if he is returned to MCAC. The inadequate design and deficient implementation of the medication record system prevents those in charge from being able to determine whether the inmate-patients in their custody are receiving the medical care—specifically drug therapy—ordered by their treating physicians. The disturbing picture painted at the December 18 hearing, where the Court was exposed to a woefully inadequate and poorly supervised system of recording the dispensing of medication, leads to the conclusion that with respect to this Defendant the Marshal's Service cannot assure this Court that it will provide the medical care that the Constitution mandates so long as he is held at MCAC. It can be questioned whether the Court may treat the Defendant's oral request as a plea for constitutional relief.

Regardless, and without deciding that question, the Court no doubt has the inherent authority to enter orders necessary to protect persons detained by its authority from the potentially life-threatening consequences of poor medical care. Therefore, it is

ORDERED, that the Defendant's oral request is GRANTED, and that between now and the time of his discharge or transfer to the United States Bureau of Prisons the United States Marshal shall not hold the Defendant at the Maryland Correctional Adjustment Center and instead shall detain him in an infirmary or in a hospital.

IT IS FURTHER ORDERED that the Defendant receive medical care compliant with the relevant standard of care in whatever facility is selected by the Marshal for the Defendant's detention.