**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

08-3649

————————

ASHLEY PAITH;
RON PATTERSON,
Appellants

v.

COUNTY OF WASHINGTON;
WASHINGTON COUNTY CORRECTIONAL
FACILITY; WARDEN JOSEPH PELZER; CAPTAIN KING

————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court  No. 2-06-cv-00806
District Judge: The Honorable Nora B. Fischer

————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2010

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: September 20, 2010 )

————————

OPINION

————————

SMITH, *Circuit Judge.*

Ashley Paith and her father, Ron Patterson, were incarcerated in the Washington County Correctional Facility for varying periods of time from 2003 to 2006. In January of 2006, they initiated this civil action in state court against the County of Washington, its correctional facility, Warden Pelzer, and Captain King (collectively referred to as the County). Paith and Patterson, both of whom had been released from the Washington County Correctional Facility, alleged in their complaint that the County was liable for various civil rights violations that occurred during their incarceration, as well as several state law tort claims. The County timely removed the action to the United States District Court for the Western District of Pennsylvania. After discovery concluded, the parties filed cross-motions for summary judgment. On July 25, 2008, the District Court granted the County's motion for summary judgment. This timely appeal followed.[1]

Although Patterson raised several claims against the County, on appeal he challenges only the District Court dismissal of his claim that he received a retaliatory and arbitrary denial of his right to work release during Paith's initial incarceration in 2003. Patterson contends that the District Court failed to address

---

[1] The District Court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Appellate jurisdiction exists under 28 U.S.C. § 1291. We conduct *de novo* review of an order granting a motion for summary judgment. *Stratechuk v. Bd. of Educ., South Orange-Maplewood Sch. Dist.*, 587 F.3d 597, 603 (3d Cir. 2009).

this claim. Putting aside whether there is such a thing as a right to work release, there is no merit to Patterson's assertion. The record establishes that Patterson filed a petition seeking work release in November 2003, and that the District Court explicitly identified Patterson's claim as one of several which was time barred.

Paith asserts that the District Court erred by granting summary judgment on her claims alleging: (1) deliberate indifference to her medical needs; (2) confinement in unconstitutional conditions; and (3) an "intentional infliction of emotional distress and/or [a] state[-]created danger growing out of the conditions of her confinement." We find no error by the District Court.[2]

At the heart of Paith's deliberate indifference claim is her contention that during her incarceration in 2005 and 2006 "she was forced to take medication without food which resulted in stomach problems and rendered the medication ineffective." In *Boring v. Kozakiewicz*, 833 F.2d 468, 473–74 (3d Cir. 1987), we declared that a prisoner's claim of deliberate indifference to a serious medical

---

[2] The District Court analyzed Paith's deliberate indifference and unconstitutional conditions of confinement claims under the Eighth Amendment. These claims arose in 2005 when Paith was incarcerated pursuant to a parole violation detainer after a domestic incident. As a result, Paith's status is like that of a pretrial detainee, *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987), and she is entitled to the protections of the Fourteenth Amendment's Due Process Clause. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (noting that Eighth Amendment's protections apply to prisoners confined as a result of a formal adjudication of their guilt, and that the Fourteenth Amendment's Due Process Clause governs the rights of pretrial detainees).

need requires expert testimony when the seriousness of injury or illness would not be apparent to a lay person.  Whether a medication is ineffective if it is given without food is not readily apparent to a lay person.  Paith offered no expert testimony to support her claim.  As a consequence, she cannot establish an essential element of her deliberate indifference claim.  For that reason, we conclude that the District Court properly granted summary judgment in favor of the County on this claim.

Paith also alleged that she was subjected to unconstitutional conditions of confinement when she was transferred to the correctional facility's "green room."[3]  The green room is not equipped with a standard toilet facility; it contains only a floor grate over an eight inch drain pipe.  The District Court recognized that in *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972), the Second Circuit held that the conditions of a strip cell that had a similar toilet facility "f[e]ll below the irreducible minimum of decency required by the Eighth Amendment."  Nonetheless, the District Court granted the County's motion for summary judgment because the "absence of a traditional toilet . . . is not, by itself, cruel and

_____

[3]  Paith's complaint alleged claims of unconstitutional conditions of confinement as a result of her placement in the green room in 2003 and 2005.  In the District Court, Paith filed a motion to withdraw her claim based on the events that occurred in 2003.  The District Court granted the motion and dismissed that claim with prejudice.  Accordingly, we address only Paith's claim challenging her confinement in the green room in December of 2005.

unusual punishment" and because prisoners confined to the green room had access to a traditional toilet upon request.

Relying on *LaReau*, and the fact that she was deprived of access to a traditional toilet, Paith contends that the District Court erred in granting summary judgment for the County. *LaReau*, however, is not controlling as it concerned the Eighth Amendment and preceded the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979), which set forth the standard applicable under the Fourteenth Amendment. In that case, the Supreme Court explained that "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* at 535. In *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983), we determined that *Bell* requires application of a two part test. "[W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." *Id.* at 992.

The record before us confirms that the green room, which had green tile on three of the walls and a fourth wall made of glass, lacked any furnishings or stationary objects, including a traditional toilet. It did have an eight inch drain in the middle of the floor covered by a grate. At least some of the room's walls were

padded. Correction Officer Hank affirmed that the room is utilized to observe "people coming down from drugs, violent people or people on suicide watch." Deputy Warden Hammett confirmed that the green room is a "cell designated for prisoners exhibiting violent and self-destructive behavior," which allows an inmate to be observed constantly. In short, the room is designed to provide a protective environment for an inmate who may be a danger to himself/herself or others.

We do not ignore the fact that the absence of a traditional toilet may deprive an inmate of access to the usual sanitation measures afforded other inmates who are not at risk of hurting themselves. Deputy Warden Hammet explained, however, that two other cells adjacent to the green room are equipped with traditional toilet facilities, and that inmates confined in the green room are given access to these traditional toilet facilities upon request. In addition, Deputy Warden Hammett pointed out that in the event an inmate utilizes the drain to relieve himself/herself, prison staff must clean the room as soon as it is safe to do so.

Furthermore, the record demonstrates that Paith was placed in the green room as a protective measure after she exhibited self-destructive behavior. Although the record fails to establish with certainty the duration of her confinement in the green room, it appears to be less than a day as she was placed

6

in the room after 9 p.m. and was returned to general housing the next day following evaluation by the prison psychiatrist who prescribed medications to address her mental impairments. In light of all these circumstances, we conclude that Paith did not establish that this condition constituted punishment in violation of her due process rights under the Fourteenth Amendment.

Paith also contends that the District Court erred by granting summary judgment in favor of the County on her claim of intentional infliction of emotional distress. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987), requires that the alleged emotional distress be supported by competent medical evidence. Paith did not adduce any medical evidence in support of her claim. Accordingly, the District Court did not err in dismissing this claim.

Finally, we consider whether the District Court erred in dismissing Paith's state-created danger claim. "[T]he Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)).

> The state-created danger theory operates as an exception to that general rule and requires plaintiffs to meet a four-part test: (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed.

7

*Id.* (citing *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)).

The District Court correctly set out this test. After considering the evidence, the Court concluded that Paith had adduced evidence of only the third element, *i.e.,* the existence of a special relationship by virtue of her imprisonment. We agree.

For the reasons set forth above, we will affirm the District Court.