[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 25, 2012
JOHN LEY
CLERK

No. 10-13357
Non-Argument Calendar

_____

D. C. Docket No. 6:09-cv-01394-PCF-DAB

CAROLYN MCCREARY,
as Personal Representative of the
Estate of Lorenza McCreary,

Plaintiff-Appellee,

versus

BREVARD COUNTY SHERIFF JACK PARKER,
individually and in his official capacity,
OFFICER JAMES MOFFITT, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 25, 2012)

ON MOTION FOR RECONSIDERATION

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

The appellant's motion for reconsideration is granted. The panel's previous order in this case is withdrawn, and the following opinion is substituted in its place:

Brevard County Sheriff Jack Parker, Officer James Moffitt, Officer Larry Cummings, and George Reed (collectively, "Defendants") appeal the district court's denial of their motion to dismiss on qualified immunity grounds Carolyn McCreary's ("Plaintiff") 42 U.S.C. § 1983 claims arising from the death of Lorenza McCreary ("McCreary") at the hands of Donte Evans, a fellow inmate in Brevard County Jail.

In their interlocutory appeal, Defendants claim that Plaintiff "failed to sufficiently allege that the conditions at the Brevard County Jail constituted a substantial risk of serious injuries, or that the conditions caused the attack on" McCreary. Defendants also argue that Plaintiff failed to show a causal connection between Parker's acts and McCreary's death or that Defendants were actually aware of the risk of a specific substantial harm to McCreary.

Plaintiff contends that this court does not have jurisdiction to hear defendants' claims. We disagree, but we affirm the district court's denial of qualified immunity.

A district court's denial of qualified immunity is an immediately appealable order provided that it concerns solely the pure legal decisions of whether "(1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct." Rehberg v. Paulk, 611 F.3d 828, 838-39 (11th Cir. 2010).

Another way to look at it is to say that this Court can properly review such cases where the defendants argue that "even on the plaintiff's version of the facts, the defendants are entitled to qualified immunity as a matter of law." Moniz v. City of Fort Lauderdale, 145 F.3d 1278, 1281 (11th Cir. 1998). Because of this, "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded. In that sense the sufficiency of respondent's pleadings is both inextricably intertwined with and directly implicated by the qualified immunity defense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1946-47 (2009) (quotations and citations omitted).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A

3

pleading that uses just labels and conclusions or a formulaic recitation of the elements of a cause of action will not meet Rule 8(a)(2). Id. Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotations and citations omitted).

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002). In this case, Plaintiff's second amended complaint satisfies Rule 8(a)(2) as to all defendants.

## Moffitt, Cummings, and Reed

We have previously held that it is "well settled that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates" the Constitution.[1] Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995)

---

[1] McCreary was a pre-trial detainee and thus the Eighth Amendment does not apply directly. However, "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Mass. Gen.

4

(quotations and alterations omitted).  Accordingly, Plaintiff was required to plead (1) there was a substantial risk of serious harm to McCreary; (2) the defendants were deliberately indifferent to that risk; and (3) causation.  Id.

Plaintiff alleges that Evans repeatedly told these corrections officials starting in June 2008 that he would not be celled with "jitterbugs"[2] and he would cause severe bodily injury to any "jitterbugs" who were quartered with him. Plaintiff alleges that the officials told Evans to "deal with it" and said, "[W]e are gonna do what we are gonna do and then you are gonna do what you are gonna do."  Evans was classified as "Purple Tag Double Restrain Dire," which Plaintiff alleges is a classification reserved for highly dangerous inmates and required Evans to be in double restraints at all times he was outside his cell.  Evans had reported that he would attack people just because they looked at him, and he had previously been very aggressive towards corrections officials when they had tried to quarter him with "jitterbugs."  Evans had also attacked a previous cell-mate with a razor blade.

Plaintiff has alleged sufficient, plausible facts to show that McCreary–whom Evans would classify as a "jitterbug"–faced a substantial risk of

_____

Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983).

[2] Plaintiff alleges that "jitterbugs" is jail slang for "young black men."

harm from being quartered with Evans, that these corrections officials knew about Evans's violent propensities when quartered with "jitterbugs," and that the officials' indifference to this knowledge caused McCreary to be placed with Evans, ultimately resulting in McCreary's death.

## Parker

"[S]upervisors can be held liable for subordinates' use of excessive force against inmates in violation of the Eighth Amendment on the basis of supervisory liability under 42 U.S.C. § 1983. Supervisory liability under § 1983 occurs when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Valdes v. Crosby, 450 F.3d 1231, 1236 (11th Cir. 2006) (quotations and citations omitted). There is no allegation that Parker himself directly took part in the decision to place McCreary in Evans's cell.

As for the other method by which Parker could be responsible for his subordinates' actions, a "causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3)

6

facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Id. at 1237.

Parker argues that he is being denied immunity simply because a death occurred in an overcrowded jail. However, Plaintiff has alleged plausible facts indicating that Parker met two of the Valdes factors. Id.

Inmate-on-inmate assaults increased rapidly at the jail, from 244 in 2002, to 368 in 2006, to over 400 in 2007. In 2008, Judge Charles Edelstein, whom Plaintiff alleges is an expert on jail overcrowding, issued a report about the causes of poor conditions at the jail, and the report was delivered to Parker. The report allegedly concluded that "[t]he heart of a safe jail is its classification system and the beds to support it. Mixing inmates who should not be housed together because of functional overcrowding is a recipe for disaster. Classification systems are designed to limit conflict, enhance control and provide greater safety for inmates and staff." Plaintiff alleged that Parker instituted a policy of double-celling inmates who were in disciplinary or administrative holding. Here, due to Parker's double-celling policy, Evans was not allowed to be quartered by himself, and this ultimately resulted in McCreary—who had not yet been convicted of any crime—being celled with an inmate who had threatened to cause serious injury to

any young black men who were quartered with him.

Plaintiff also alleges that Parker had publically admitted that the jail was dangerous due to the overcrowding. Parker had received an inmate Self Report Survey that indicated dangerous conditions, but Plaintiff alleges that Parker's response was merely to complain about inmates being allowed to participate in a survey. Plaintiff also alleged that Parker himself had been informed by inmates that staff members were placing certain inmates together in order to increase the likelihood of violence–the same thing that Plaintiff alleges happened to McCreary.

Given Parker's alleged knowledge of the increasing frequency of inmate-on-inmate violence, Judge Edelstein's report, and allegations that inmates had repeatedly complained to Parker about being quartered with dangerous inmates and Parker's failure to correct same notwithstanding his ability to do so, as well as the operation of Parker's own policy of double-celling in the face of these circumstances, Plaintiff has pleaded sufficient facts to state a claim against Parker that is plausible on its face. Valdes, 450 F.3d at 1237.

As discussed above, there is no doubt that such a violation would be of a clearly established right. As far back as 1974, this court[3] held that improper

---

[3] Fifth Circuit opinions issued prior to October 1, 1981, are binding precedent on this court. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

supervision of inmates, overcrowding, and frequent inmate-on-inmate attacks could rise to the level of posing a serious risk of harm to an inmate, thus implicating the Constitution. Gates v. Collier, 501 F.2d 1291, 1309 (5th Cir. 1974).

AFFIRMED.[4]

---

[4] Defendants' request for oral argument is DENIED.