Espaillat v. Mousseau                    CV-03-338-SM   12/16/04
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Miguel Espaillat,
     Plaintiff

     v.                                    Civil No. 03-338-SM
                                           Opinion No. 2004 DNH 182
Sergeant John Mousseau,
in his individual capacity,
     Defendants,


                         **O R D E R**


     Miguel Espaillat, a federal inmate, filed this action

against three correctional officers at the Cheshire County

Department of Corrections ("CCDC"), each in his individual

capacity.  He claims that while he was housed at CCDC as a

pretrial detainee, correctional officers violated his

constitutionally protected rights by failing to protect him from

an assault by another inmate, and by denying him appropriate

medical care for injuries he sustained in the attack.[1]

_____

     [1]    Because Espaillat was a pretrial detainee when the
events in question occurred, the constitutional obligations owed
to him by CCDC correctional officers flow from the provisions of
the Fourteenth, rather than the Eighth Amendment.  Nevertheless,
the protections available to pretrial detainees under the
Fourteenth Amendment "are at least as great as the Eighth
Amendment protections available to a convicted prisoner." City
of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)
(citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  Thus, at a

Two of the defendants named in Espaillat's complaint (Guyette and Tracy) are no longer employed by CCDC and were never served with a copy of plaintiff's complaint. Accordingly, by order dated October 26, 2004, Espaillat's claims against them were dismissed, without prejudice. The remaining defendant, Sergeant John Mousseau, moves for summary judgment, asserting that the record establishes that no material facts are in dispute and that, as a matter of law, he is entitled to qualified immunity.[2]

In response to Mousseau's motion, Espaillat conceded that some of his claims against Mousseau might properly be dismissed. Accordingly, the parties submitted a stipulation of dismissal as to all claims asserting that Mousseau was deliberately

minimum, CCDC correctional officers had a constitutional duty not to be "deliberately indifferent" to Espaillat's security needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

[2] In a prior order, the court questioned whether Espaillat had complied with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Defendant, however, has not responded to that inquiry, nor does he assert that the CCDC has a written inmate grievance procedure, nor does he claim that, if one exists, Espaillat failed to exhaust available remedies. Accordingly, the court has assumed that defendant has waived any defense that Espaillat failed to fully exhaust available administrative remedies.

indifferent to Espaillat's serious medical needs. Espaillat continues his objection to Mousseau's motion to the extent it seeks judgment on his claim of deliberate indifference to serious security concerns.

## Background

On August 2, 2001, Espaillat and his cell-mate were involved in an altercation. Each claimed the other was the aggressor and each sustained non-life-threatening injuries. Among other things, Espaillat says he was severely beaten and his nose was broken.

Espaillat asserts that on several occasions prior to the altercation, he asked various correctional officers to transfer him to a different cell. And, while his affidavit is decidedly vague on this critical point, Espaillat at least implies that those officers were aware of the danger posed by his cell-mate. He claims that those transfer requests were ignored. Sergeant Mousseau, however, says that prior to the altercation, Espaillat never informed him of a desire to transfer out of his cell. Mousseau also states that, pursuant to CCDC policy, any requests

3

for transfer must be made <u>in</u> <u>writing</u> and Espaillat never submitted any such request(s):

> Prior to this incident [i.e., the assault], Mr. Espaillat never requested a cell or housing pod transfer to me, nor submitted any documentation to the administration, requesting such transfers. Per institution policy and procedures, in order to grant a requested cell or day-room transfer, it must be submitted in writing and the staff must find a compelling reason to do so.

Exhibit A to defendant's motion for summary judgment, Affidavit of John Mousseau at para. 11.

The keeper of the records at CCDC, Richard Van Wickler, has filed certified copies of all records relating to plaintiff maintained by CCDC. Nowhere in those records is there a copy of a written request by Espaillat seeking a transfer to another cell prior to the altercation in which he was injured.[3] Nor is there

---

[3] There is an undated request from plaintiff seeking a transfer to a different cell. However, the nature of that request (i.e., plaintiff's then-current location in the CCDC) reveals that the request was necessarily made <u>after</u> the altercation. That is to say, plaintiff's written request seeks transfer out of the cell block to which he was moved immediately after the altercation; it does not seek transfer out of the cell in which the altercation took place. <u>See</u> Affidavit of John Mousseau at para. 18.

4

any record suggesting that plaintiff notified correctional officials that his cell-mate had threatened him.

In response, Espaillat claims that he orally requested Mousseau to transfer him, see exhibit 1 to plaintiff's objection (document no. 23), Affidavit of Miguel Espaillat at para. 6, and, on at least one occasion, made that request in writing, though Espaillat does not specifically state to whom he submitted his written request(s).  According to Espaillat, correctional officers did not provide him with a copy of his written transfer request(s), nor did they give him a receipt of any sort.  That, says Espaillat, explains why he has been unable to produce any record supporting his claim to have submitted a transfer request in writing.

## Discussion

The sole remaining count asserts that Mousseau was deliberately indifferent to Espaillat's serious security concerns and, by ignoring Espaillat's repeated pleas for transfer to a different cell, failed to protect him from a foreseeable assault committed by his cell-mate.

The Supreme Court has noted that the "Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation and internal punctuation omitted). Among other things, the Constitution imposes on prison officials the obligation to "protect prisoners from violence at the hands of other prisoners." Id. at 833 (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. Rather, liability attaches only when two requirements are met:

> First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

<u>Id</u>. at 834 (citations and internal punctuation omitted).  <u>See</u>
<u>also</u> <u>Calderon-Ortiz v. Laboy-Alvarado</u>, 300 F.3d 60 (1st Cir.
2002).

Under the second part of that two-part test, a prison
official "cannot be found liable . . . for denying an inmate
humane conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.
The test is, then, a subjective one.  And, "[w]hether a prison
official had the requisite knowledge of a substantial risk is a
question of fact."  <u>Id</u>. at 842.

Although whether a correctional officer harbored the
requisite state of mind to have been "deliberately indifferent"
to a serious risk of substantial harm is a question of fact, that
does not necessarily mean that a defendant can never prevail on a
motion for summary judgment.  For example, a defendant might
demonstrate that, based upon the alleged assailant's prior
exemplary behavior within the correctional facility, no

7

reasonable trier of fact could conclude that the defendant should have known that the assailant posed an "excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

In a prison-conditions case such as this, the plaintiff must point to facts from which the defendant might reasonably have inferred that a particular inmate posed a substantial threat to the safety of one of more other inmates, thereby warranting some preventative measures on the part of prison authorities. Simply positing that a cell transfer request was made before the assault is not, standing alone, sufficient; it does not compel the conclusion that such a transfer was warranted or necessary to protect the inmate's safety, or that correctional officers recognized but were indifferent to the need for a protective transfer. Nor are correctional officers necessarily liable merely because such a request was denied and the plaintiff was subsequently assaulted by another prisoner. As noted above, not every "injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

Here, whether Espaillat notified Mousseau of his desire to transfer cells and, just as importantly, that his cell-mate had threatened him, is a genuinely disputed material fact.[4]  Mousseau denies that Espaillat ever informed him of a desire (or need) to change cells, see Exhibit A to defendant's memorandum (document no. 17) at para. 11, while Espaillat insists that he did (both orally and in writing), see Exhibit 1 to plaintiff's objection (document no. 23), Espaillat affidavit at paras. 5 and 6. Espaillat also advances minimally sufficient facts to support the possible inference that Mousseau knew that Espaillat's cell-mate posed a physical threat to him.  See Espaillat affidavit at para. 6.

Accordingly, Espaillat's affidavit provides evidence (either directly or by implication) minimally sufficient to support each of the essential elements of his claim that Mousseau was

---

[4]     Even if it were certain that Espaillat failed to comply with CCDC policy by neglecting to submit a written transfer request, that fact would not necessarily entitle Mousseau to judgment as a matter of law.  If a correctional officer is aware of a serious threat against an inmate, that officer cannot escape liability simply because the inmate failed to reduce his or her concerns to writing, or failed to follow a particular administrative procedure.

deliberately indifferent to the serious threat posed by Espaillat's cell-mate:

1. Although his affidavit is decidedly vague on this point, Espaillat implies that he informed Mousseau of, or that Mousseau was aware of, the threats his cell-mate made against him;

2. Espaillat unequivocally asserts that he requested Mousseau to arrange a cell transfer (and, at least implicitly, suggests that Mousseau knew that he had requested the transfer because of those alleged threats);

3. Notwithstanding his (alleged) knowledge of that serious threat to Espaillat's safety, Mousseau did not take steps to arrange a cell transfer; and

4. As a consequence of Mousseau's failure to act, Espaillat suffered a severe beating at the hands of his cell-mate.

What is noticeably absent from defendant's submissions is any information regarding the disciplinary history of the alleged assailant, Jason Farinoli (Espaillat's cell-mate), whether Farinoli was known to correctional officers as being prone to violence, whether he had committed any prior assaults on other cell-mates, etc. In other words, Mousseau's submissions are silent on a critical issue: what Mousseau knew about Espaillat's cell-mate and whether he realized that Farinoli posed an

10

excessive risk to Espaillat's health or safety. Absent such evidence, and given the parties' dispute as to whether Espaillat actually notified Mousseau of his security concerns (and/or the reasons for those concerns), the court cannot conclude that Mousseau is entitled to summary judgment. On this sparse evidentiary record, it is conceivable that a properly instructed jury could reasonably conclude that Mousseau acted with deliberate indifference to Espaillat's serious security needs (if, for example, the cell-mate had a history of assaulting other inmates; or, if the trier-of-fact were to credit Espaillat's testimony, find that he did inform Mousseau of the threats made by his cell-mate, and conclude that Mousseau appreciated the seriousness of those threats).

## Conclusion

For the foregoing reasons, defendant Mousseau has failed to demonstrate that he is entitled to judgment as a matter of law as to the claim that he was deliberately indifferent to Espaillat's serious security needs. Defendant's motion for summary judgment (document no. 17) is, then, denied without prejudice. His motion to strike plaintiff's objection (document no. (27) is likewise denied.

11

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 16, 2004

cc:  John A. Curran, Esq.
     Miguel Espaillat, pro se