Espaillat v. Mousseau                    03-CV-338-SM  05/18/05
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Miguel Espaillat,
     Plaintiff

     v.                                  Civil No. 03-338-SM
                                         Opinion No. 2005 DNH 082
Sergeant John Mousseau,
in his individual capacity,
     Defendant,


                          **O R D E R**


     Miguel Espaillat, a federal inmate, filed this action

against three corrections officers at the Cheshire County

Department of Corrections ("CCDC").  At this point, only a single

claim remains from his original complaint: Espaillat's assertion

that while he was a pretrial detainee at CCDC, Sergeant John

Mousseau violated his constitutional rights by failing to protect

him from an assault committed by another inmate.


     Mousseau moves for summary judgment, asserting that

plaintiff has failed to point to any evidence which suggests that

Mousseau harbored the requisite "deliberate indifference" to

Espaillat's security concerns.  Although Espaillat was served

with a copy of Mousseau's motion, he has not objected.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Discussion

Espaillat asserts that Mousseau was deliberately indifferent to his serious security concerns and, by ignoring Espaillat's repeated pleas for transfer to a different cell, failed to protect him from a foreseeable assault committed by his cell-mate. By prior order, the court denied, without prejudice,

2

Mousseau's motion for summary judgment.  Espaillat v. Mousseau, 2004 DNH 182 (D.N.H. Dec. 16, 2004) ("Espaillat I") at 10-11.  In response, Mousseau has supplemented the record and again moves for summary judgment.

I.  Governing Law - Deliberate Indifference.

Espaillat was a pretrial detainee when the events in question occurred.  Accordingly, the constitutional obligations owed to him by CCDC officials flow from the provisions of the Fourteenth, rather than the Eighth Amendment.  Nevertheless, the protections available to pretrial detainees under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  See generally Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60 (1st Cir. 2002).

As the Supreme Court has observed, the "Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation and internal punctuation omitted).  Among other things,

3

the Constitution imposes on prison officials the obligation to "protect prisoners from violence at the hands of other prisoners." Id. at 833 (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. Rather, liability attaches only when two requirements are met:

> First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

Id. at 834 (citations, footnote, and internal punctuation omitted).

Under the second part of that two-part test, the plaintiff must demonstrate that the defendant was more than merely

4

negligent.  See, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other words, a prison official "cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  The test is, then, a subjective one.  And, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact."  Id. at 842.

While a corrections officer's alleged deliberate indifference to a serious risk of substantial harm presents a question of fact, that does not necessarily mean that a defendant can never prevail on a motion for summary judgment.  For example, a defendant might demonstrate that, based upon the alleged assailant's prior exemplary behavior within the correctional facility, no reasonable trier of fact could conclude that the defendant should have known that the assailant posed an

5

"excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837.

So, to avoid summary judgment in a prison-conditions case such as this, the plaintiff must point to facts from which the defendant might reasonably have inferred that a particular inmate posed a substantial threat to the safety of one of more other inmates, thereby warranting some preventative measures on the part of prison authorities. Simply positing that a cell transfer request was made before the assault is not, standing alone, sufficient; it does not compel the conclusion that such a transfer was needed to protect the inmate's safety, nor does it necessarily suggest that corrections officers recognized, but were indifferent to, the need for a protective transfer. In other words, corrections officers do not violate the Constitution every time a cell transfer request is denied and the plaintiff is subsequently assaulted by another prisoner. As noted above, not every "injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." <u>Farmer</u>, 511 U.S. at 834. For liability to attach in cases such as this case, the

plaintiff must proffer evidence from which it could be found that a corrections officer was aware of, but consciously disregarded, an excessive risk to plaintiff's safety.

II.  Plaintiff's Evidence.

Here, the essence of plaintiff's claim against Mousseau is that, on several occasions prior to the altercation in which he was injured by his cellmate, he asked various unidentified corrections officers to transfer him to another cell; although Mousseau was on vacation when the incident occurred, he was a supervisor on the cell block and was generally aware of plaintiff's desire for a transfer; and, notwithstanding several requests for a cell transfer, plaintiff was never moved. According to plaintiff, Mousseau's failure to honor his cell transfer requests proximately caused the injuries he sustained in the altercation with his cell mate.  See Exhibit 1 to document 23, Affidavit of Miguel Espaillat at para. 5-6.

Importantly, however, what is absent from plaintiff's filings is any evidence that Mousseau knew or should have known

7

that plaintiff's cellmate posed a danger to him.  The relevant

portions of plaintiff's affidavit provide as follows:

> <u>That I did request from staff at least four (4) written requests to be moved within a two week period prior to the events of August 2, [2001]</u>; that for at least one week, Defendant Mousseau worked as a Sergeant and supervisor staff, and remain[ed] inside a sealed unit containing one-way mirrors where they can see the pretrial detainees, but we cannot see them; that we must hand the request through a slot in the unit and they are to answer us; that we have no means to make copies for ourselves, and staff will not supply any copy, nor return the requests, when answered, to the pretrial detainee; that they just verbally inform us the request was denied; that from about the second or third day upon my arrival, until the day of the event, I not only made four written requests, but at least two verbal requests to staff, whereby I was instructed to write them down, but because I was never afforded any copies of the written requests, I cannot present such evidence, but have obtained some witnesses, by witnessed statements, that staff do not respond to requests from pre-trial detainees.
>
> That I know the officers by their voices, from when they spoke to me in [the] presence of my person on other occasions; that I did specifically request for a copy of the request note back and was told I could not receive it; <u>that Defendant Mousseau was one of the officers that I had informed</u>, prior to his leaving for vacation, and was never moved, thereby being placed into a position that allowed pre-trial detainee, Mr. Farinoli [to assault me]; that I overheard others speaking that this person was not "quite normal in the head."

<u>Id</u>. at paras. 5-6 (emphasis supplied).  Even construing

plaintiff's affidavit liberally, the most one might reasonably

8

infer is that Mousseau was aware of plaintiff's desire to change cells. But, nothing in plaintiff's affidavit suggests that he informed Mousseau (or that Mousseau knew) that plaintiff believed his cellmate posed a physical danger to him.

Nevertheless, given plaintiff's pro se status, and in light of the substantial deference afforded to pro se litigants in this circuit, the court denied Mousseau's original motion for summary judgment. In so doing, the court noted that, given the sparse evidentiary record and the absence of any information concerning the cellmate's disciplinary history, a trier of fact might, conceivably, infer that: (1) the cellmate was a violent inmate who posed a danger to Espaillat; and (2) Mousseau was aware of that danger. Espaillat I, at 10-11.

In his renewed motion for summary judgment, Mousseau addresses those issues in detail. Among other things, Mousseau has submitted CCDC's official records relating to plaintiff's former cellmate, Jason Farinoli. Additionally, he has submitted a second affidavit, in which he testifies to the following:

9

>       To my knowledge, at no time prior to August 2d did
>       either Mr. Espaillat or his cellmate, Mr. Farinoli,
>       ever request cell transfers to be separated from one
>       another.  Prior to August 2d, they were roommates from
>       7/1/01 to 8/2/01, without noted incident.
>
>       In response to this court's recent order denying
>       summary judgment, I have reviewed the inmate file of
>       Jason Farinoli, the plaintiff's cellmate on 8/2/01; I
>       append a true and accurate copy of Mr. Farinoli's
>       inmate file to this affidavit (with personal
>       information redacted).
>
>       The inmate file shows that the various charges that led
>       to Mr. Farinoli's incarcerations at [CCDC] includ[e]
>       probation violation/default, driving after revocation
>       and various drug (possession) offenses.  There are no
>       indications of any assaults or aggression based conduct
>       leading to criminal charges against Mr. Farinoli.

Exhibit A to defendant's motion for reconsideration (document no.

32), Affidavit of John Mousseau at paras. 4-6.  Mousseau also

points out that during Farinoli's four periods of incarceration

at CCDC, the only episode involving any aggression or assaultive

behavior on his part was the August, 2001, incident with

plaintiff.  Id. at para. 8.  In fact, that incident gave rise to

the only disciplinary citation ever issued against Farinoli

during his four periods of incarceration at CCDC.  Id. at 13.


     Given Farinoli's lack of any history of violence or

aggression as an inmate at CCDC, and given plaintiff's failure to

10

point to any evidence which even suggests that Mousseau knew that Farinoli posed a physical threat to plaintiff (or even that Mousseau realized that plaintiff believed Farinoli posed such a threat), there is simply no evidence from which a properly instructed trier of fact might reasonably conclude that Mousseau was deliberately indifferent to a known threat to plaintiff's health and safety.

## Conclusion

In light of the additional evidence proffered by Sergeant Mousseau in his renewed motion for summary judgment, it is apparent that he is entitled to judgment as a matter of law on plaintiff's § 1983 claim. Simply stated, the record evidence is such that a trier of fact could not reasonably infer that Mousseau knew that Farinoli posed any type of threat to plaintiff's physical safety or well-being. Consequently, plaintiff cannot, as a matter of law, carry his burden of establishing that Mousseau was aware of and nevertheless disregarded (i.e., was "deliberately indifferent to") an excessive risk to Espaillat's safety. See Farmer, 511 U.S. at 837.

11

Defendant's Second/Renewed Motion for Summary Judgment (document no. 38) is granted.  Defendant's Motion to Dismiss (document no. 40) is denied as moot.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 18, 2005

cc:  Miguel Espaillat, pro se
     John A. Curran, Esq.

12