

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2008

# King v. Gloucester

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3954

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"King v. Gloucester" (2008). *2008 Decisions.* Paper 133.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/133

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3954

CHESTER A. KING; ELIZABETH M. DARDEN, individually and in
their capacities as Co-Administrators and Administrators
Prosequendum of the ESTATE OF BERNARD A. KING, Deceased,
Appellants

v.

COUNTY OF GLOUCESTER; GLOUCESTER COUNTY JAIL;
NEW JERSEY DEPARTMENT OF CORRECTIONS;
MONROE TOWNSHIP; EDWIN BERWICK, MONROE TOWNSHIP POLICE
CHIEF; CHRISTOPHER HARRIS; MICHAEL MCLAUGHLIN; ROBERT
DEMARZIO; RICHARD ANDRESS; WILLIAM GLAZE; DOMINIC CAPANNA;
JOHN VARALLI; GERALD SHANNON; DEREK BRITT; JAMES SHARP; ANDY
MCCLAVE; JUSTIN HATTON; STEVEN NEWSOME; BRIAN ZANE; TIMOTHY
KRULIKOWSKI; ROBERT BRUNO; RONNIE SANDY; BARRY FELLS; CRAIG
MONAHAN; JOHN RUMPF; HOWARD WIEMER

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D. N.J. No.: 03-cv-05863)
District Judge: The Honorable Renee M. Bumb

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2008

Before: BARRY, CHAGARES, <u>Circuit Judges</u>, and RESTANI,<sup>*</sup> <u>Judge</u>

---

<sup>*</sup> Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

OPINION

BARRY, Circuit Judge

Appellants, the parents of decedent Bernard King ("Bernard"),[1] appeal from the District Court's grant of summary judgment in favor of John Rumpf, Craig Monahan, and Howard Wiemer (the "individual defendants"), and in favor of Monroe Township and Police Chief Edwin Berwick ("Township" or "municipal defendants").

This lawsuit arises from Bernard's tragic jailhouse death. On April 8, 2003, Bernard was arrested by the Monroe Township Police Department for violating a temporary restraining order that had been taken out against him by his step-mother, Claudette King ("Claudette"), one week earlier. After processing, he was transferred to the custody of the Gloucester County Sheriff's Department. He was to be held overnight at the Gloucester County jail, but upon arrival, Bernard began exhibiting bizarre behavior. According to the complaint – which is unchallenged by defendants – three corrections officers reacted to Bernard's behavior by dragging him into an elevator, stopping it between floors, and severely beating him. The corrections officers then dragged him into

_____

[1] Chester King ("Chester") and Elizabeth Darden are Bernard's biological parents, and were the named plaintiffs, suing in their individual capacities and as co-administrators of Bernard's estate.

a holding cell, where they left him face down and shackled to a bed post. Bernard died of positional asphyxia before dawn.

Appellants originally filed suit against the County of Gloucester, the Gloucester County Jail, the New Jersey Department of Corrections, and numerous corrections officers, but have since voluntarily dismissed their claims against those parties pursuant to settlement agreements. Their remaining claims were bottomed on the fact that the Township Police Department sent Bernard to prison rather than to the hospital. Those claims, brought under 42 U.S.C. § 1983, alleged that the individual defendants were deliberately indifferent to Bernard's medical needs, in violation of his Eighth and Fourteenth Amendment rights; that the municipal defendants failed to adequately train their officers, and developed customs exhibiting deliberate indifference to the constitutional rights of arrested citizens; and that these collective actions and omissions were the proximate cause of Bernard's death. Appellants also brought several claims under New Jersey law, alleging negligence, gross negligence, and wrongful death.

The District Court granted summary judgment, concluding as a matter of law that the individual defendants were not deliberately indifferent and, in any event, were entitled to qualified immunity; that the municipal defendants neither failed to train their officers nor created a culture of indifference to the medical needs of detainees; and that the state law claims should be dismissed without prejudice. For the following reasons, we will affirm.

Bernard had numerous encounters with the Township Police Department prior to his arrest on April 8, 2003, at least three of which occurred in the two preceding weeks. During each encounter, the effects of his severe mental disorder – schizoaffective disorder, biopolar type – were apparent. One such encounter occurred on March 26, 2003, when officers responded to a complaint by Chester that Bernard had ransacked his home and destroyed much of the furniture therein. Bernard was restrained and taken to Underwood Memorial Hospital for a psychiatric evaluation. He remained at Underwood until April 1, 2003, and hospital records reflect that he was suffering from "schizoaffective disorder, bipolar type," and that he was "currently manic." Following the furniture-destruction episode, Bernard's step-mother, Claudette, sought and received a temporary restraining order against him.

Late in the evening of April 8, 2003, Bernard went to Chester and Claudette's home and began ringing the door bell – thus initiating contact prohibited by the temporary restraining order. Claudette, who was home alone, left the house through the back door, and went to her son's home next door. Her son called the police as Bernard drove away.

Sergeant Howard Wiemer ("Wiemer") received a radio dispatch reporting that Bernard had violated the restraining order, responded to the area of the violation, and saw Bernard's vehicle. He pulled Bernard over, identified him, and asked him to step out of the vehicle. At that point, back-up officers Craig Monahan ("Monahan") and John

Rumpf ("Rumpf") arrived. It is not disputed that Bernard was calm, polite, and compliant at the time. He was placed under arrest, and transported to the Township police station by Rumpf and Monahan. During the trip, Bernard was cooperative and aware of the circumstances – he asked how long the process would take, and indicated that he needed to be at work in the morning. Upon arrival at the station, he was handcuffed to a bench in the holding area. He continued to be conversant and aware of his surroundings.

Rumpf took control of the processing and the investigation. In the process of filling out the arrest report, he reviewed a copy of the temporary restraining order, which indicated that Bernard was "bipolar/manic depressive" and "just released [from the hospital]." Rumpf also spoke with Claudette, who arrived at the police station to file a victim statement. Claudette described the events of that evening, and the furniture-destruction episode, in some detail. She indicated that Bernard was bipolar, and that he should have been taking medication. She declined to post bail of $250 because she did not want Bernard on the street before the hearing the following morning.

After Claudette informed Rumpf that Bernard should have been on medication, Rumpf further investigated the matter. He first asked Bernard about his medication, and Bernard responded that he was not supposed to be taking medication and had not done so. Rumpf asked Monahan whether he located any medication in Bernard's car, and Monahan indicated that he had not. In his deposition, Rumpf stated that he paid particular attention to Bernard's demeanor – evaluating him for "signs of mental distress,

5

his mood, his perception, [whether] he was under duress, if he was disheveled in any way, [whether] he look[ed] like he was in danger of [harming] himself or in danger of inflicting harm to anybody else or property" – and that he showed no disturbing signs. Rumpf, therefore, determined that a psychiatric screening was unnecessary and called for a transfer to the Gloucester County prison.[2] Bernard did not survive the night.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo, viewing the underlying facts and reasonable inferences therefrom in the light most favorable to the party opposing the motion for summary judgment. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Accordingly, a district court's grant of summary judgment is proper only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Carrasca v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002).

## III.

A. *Individual Defendants*. Appellants assert: (1) that there are outstanding issues

---

[2] Sergeant Barry Fell of the Gloucester County Sheriff's Department arrived at the Township police station to transport Bernard, and found him handcuffed to the bench, exhibiting a calm demeanor. Fell spoke briefly with several Township police officers, and asked Bernard medical questions for the County's intake form. Bernard did not indicate that he was in need of medical attention, nor did his demeanor betray a need for medication or hospitalization. The Gloucester County Prison records reflect that Bernard's mental and physical condition, upon intake, was "okay."

of material fact regarding whether the individual defendants were deliberately indifferent to Bernard's medical needs; and (2) that the individual defendants were not entitled to qualified immunity. We address these assertions in turn.

"To establish a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). Because it is undisputed that the individual defendants were acting under color of state law, our focus is on whether they violated Bernard's constitutional rights.

The contours of the constitutional rights at issue are not clearly defined, as they involve an intersection of the Eighth and Fourteenth Amendments. "The Eighth Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference to serious medical needs of prisoners.'" *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Yet, "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'" *Hubbard v. Taylor*, 399 F. 3d 150, 164 (3d Cir. 2005) (*Hubbard I*) (quoting *Graham v. Conor*, 490 U.S. 386, 392 n. 6 (1989)). Because Bernard was a pretrial detainee, the Eighth Amendment "has no [direct] application." *City of Revere*, 463 U.S. at 244. The applicable constitutional protection is the Due Process Clause of the Fourteenth Amendment which "does require the

responsible...governmental agency to provide medical care" to pre-trial detainees, *id.*, because the failure to do so amounts to punishment without an adjudication of guilt. *See Hubbard I*, 399 F. 3d at 166.

In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard: "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." *Natale*, 318 F.3d at 581 (quoting *City of Revere*, 463 U.S. at 244); s*ee also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (holding that "at a minimum the 'deliberate indifference' standard of *Estelle v. Gamble*, must be met").

Appellants do not argue that the Fourteenth Amendment provides greater protection than the Eighth Amendment in the context of pretrial detainees, and instead contend that the individual defendants were deliberately indifferent to Bernard's serious medical needs. *See Estelle*, 429 U.S. at 106. Under similar circumstances in *Natale*, we stated: "[a]s the issue was not raised before us, we do not decide whether the Due Process Clause provides additional protections to pretrial detainees beyond those

provided by the Eighth Amendment to convicted prisoners." 318 F.3d at 581 n. 5.

"We therefore evaluate [plaintiffs'] Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment, the same standard used by the District Court [below]." *Id.* at 582. "The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.'" *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted). The District Court found that an issue of fact existed as to whether Bernard had a serious medical need, but also found that, as a matter of law, the individual defendants did not act with deliberate indifference to that need. (Appendix, "A.", at 12). The parties have focused on the latter finding, as do we.

Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment. "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Therefore, appellants were required to show that the prison officials knew of a substantial risk of serious harm – which may be inferred if the risk was obvious – and failed to act despite that knowledge. *Id.* at 842. The District Court properly concluded that, even viewing the evidence in appellants' favor, the requisite showing had not been made.

Appellants' central argument before us is that given Bernard's extensive history

with the Township Police Department, the individual defendants were aware of his severe mental disorder, and that their awareness gave rise to an obligation to take him to the hospital for psychiatric treatment. In support of that argument, they stress that at least two of the individual defendants – Rumpf and Monahan – knew of Bernard's mental disorder. There is, indeed, sufficient evidence in the record to support that conclusion. But to show deliberate indifference, appellants were also required to demonstrate that the individual defendants were subjectively aware that the mental disorder, if not immediately treated, would pose "a substantial risk of serious harm." *Id.*; *and see id.* at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware").[3]

---

[3] In vacating the District Court's denial of qualified immunity in *Rouse v. Plantier*, we stressed the importance of determining the immediacy of the risk. 182 F.3d 192, 198-99 (3d Cir. 1999). There, plaintiffs were a class of insulin-dependent diabetic prisoners who alleged that New Jersey corrections officials were deliberately indifferent to their medical needs. We noted that "not all insulin-dependent diabetics require the same level of medical care." *Id.* at 198. There are "unstable" diabetics "whose blood sugar levels consistently fluctuate...[and who] require intensive medical treatment." *Id.* There are also "stable" diabetics, "whose blood sugar levels remain [relatively constant] over time." *Id.* "Consequently," a level of care that "violates the Eighth Amendment rights of the unstable plaintiffs may not violate the constitutional rights of the stable plaintiffs." *Id.* at 199. Here, had Bernard been acting in an unstable manner, indicating that the need for treatment was urgent, the officers may have been constitutionally required to take him to the hospital. That was not the case.

There is no evidence that Bernard required immediate treatment, or that the officers drew that inference; indeed, there is substantial evidence to the contrary. Bernard was calm, conversant, and aware of his surroundings. When asked by Rumpf if he was on medication, or needed medication, Bernard answered in the negative. Although Claudette warned Rumpf that Bernard "should be sent back" to the hospital, there was no indication that a night in jail – with a hearing scheduled before a state judge early the following morning – posed a substantial risk of serious harm. Without more, we cannot conclude that there is a jury question regarding whether the individual defendants were deliberately indifferent to Bernard's medical needs.[4]

In any event, the individual defendants were entitled to qualified immunity. "Under certain circumstances, government officials are protected from . . . § 1983 suits by qualified immunity." *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006). A qualified immunity analysis includes two steps: first, "[t]aken in the light most favorable to the

---

[4] Indeed, without more, the individual defendants could not have forced Bernard to undergo unwanted medical treatment. Pretrial detainees have a qualified "right to refuse unwanted medical treatment," which controls unless the detainee has demonstrated that he is dangerous to himself or others. *White v. Napoleon*, 897 F.2d 103, 112, 113 (3d Cir. 1990). Thus, unless Bernard's behavior indicated that he was dangerous to himself or others (and there is nothing in the record suggesting that was the case), he could not be medicated without his consent.

As the District Court noted, plaintiffs were essentially asking it to impose a duty on local police departments to involuntarily send all detainees with a known history of mental illness to a mental health center for evaluation and treatment. (A. 13). That is not what the law requires, see *Farmer*, 511 U.S. at 842, or even allows, see *White*, 897 F.2d at 112.

11

party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, second, "if a violation [can] be made out, the next . . . step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Even assuming plaintiffs could prevail at the first step, they could not at the second. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable police officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Thus, "[t]he qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Giles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Here, the individual defendants found themselves between two competing obligations: the need to respect Bernard's constitutional right to decline medical treatment, see *White*, 897 F.2d at 112 and *supra* note 6, and the obligation to be responsive to his medical needs, see *Natale*, 318 F.3d at 582. *See also Saucier*, 533 U.S. at 201 (holding that determination of whether right is clearly established "must be undertaken in light of the specific context of the case"). Their conduct cannot, therefore, be considered clearly unlawful.

B. *Municipal Defendants*. Appellants contend that Monroe Township and its police chief, Edwin Berwick, are liable for failing to adequately train the Township's police officers, and for developing customs that exhibited deliberate indifference to the constitutional rights of detainees. They assert that the District Court's conclusion to the

12

contrary was error. We disagree.

The burden on a plaintiff seeking to establish municipal liability in a § 1983 claim is quite high. As the Supreme Court stated in *Board of County Commissioners of Bryan County v. Brown*:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

520 U.S. 397, 404 (1997) (emphasis in original); *see Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Because appellants did not establish a constitutional violation, they likewise did not establish that the Township was the "moving force" behind a constitutional violation. *See Startzel v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008).

C. *State Claims*. Lastly, appellants contend that their state claims should be reinstated. Under 28 U.S.C. § 1367(c), a district court has the discretion to decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." That discretion was not abused here. *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims") (citations omitted).

**IV.**

We will affirm the District Court's September 6, 2007 order granting summary judgment in favor of the individual and municipal defendants, and dismissing the state law claims without prejudice.