NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1820
_____

BRENDA S. NAVOLIO, Individually
and as the Administratrix of the Estate
of MATTHEW A. HAMILTON, Deceased,

Appellant,

v.

LAWRENCE COUNTY;
PRIMECARE MEDICAL, INC.,
individually and officially
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:08-cv-01286)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
January 6, 2011

Before:  AMBRO and FISHER, *Circuit Judges*, and SÁNCHEZ,* *District Judge*.

(Filed:   January 19, 2011 )
_____

OPINION OF THE COURT
_____

SÁNCHEZ, *District Judge*.

_____

* The Honorable Juan R. Sánchez, District Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

This case arises out of the tragic death of Matthew Hamilton from head injuries he sustained while in the custody of the Lawrence County Jail (the Jail) as a pretrial detainee. Hamilton was injured when he hit his head after either jumping or falling over a stairway railing on the Jail's second floor and landing on the first floor eleven feet below. Following Hamilton's death, his mother, Brenda Navolio, filed suit against Lawrence County and PrimeCare Medical, Inc. (PrimeCare), the Jail's medical services provider, pursuant to 42 U.S.C. § 1983 and Pennsylvania law. The District Court granted summary judgment in favor of both Defendants as to Navolio's § 1983 claims and declined to exercise supplemental jurisdiction over Navolio's state law claim, and Navolio appealed. For the reasons set forth below, we affirm

I.

On September 13, 2006, Hamilton was arrested on a bench warrant and taken to the Jail. During the intake process, Hamilton told a nurse he was under the influence of various drugs and alcohol. As a result, he was placed on a detoxification regimen, which included prescriptions for Vistaril and Bentyl, medications used to treat symptoms of drug and alcohol withdrawal.[1] The prescribing physician also restricted Hamilton to the bottom bunk of his cell for ten days, in accordance with PrimeCare's standard practice, because a small percentage of inmates would experience seizures or dizziness during detoxification. Because Hamilton was placed in a cell on the second level of the Jail, he was required to walk down a flight of stairs in order to receive his medications and be evaluated by a nurse.

On September 15, 2006, at approximately 8:20 p.m., Hamilton walked from his cell to the medical station where nurse Lynn Sharp checked his blood pressure and gave him his medications. Hamilton told Sharp he had vomited twice since dinner but had not vomited for

---

[1] These medications have a number of possible side effects, including drowsiness and dizziness. (App. 272a-274a.)

over an hour since his last dose of medications was administered. He also stated he felt the medications were helping. Sharp reported Hamilton was ambulating without difficulty and showed no signs of depression, pain, or discomfort, other than vomiting. She also completed an alcohol/drug withdrawal flow chart, indicating Hamilton displayed or reported signs of weakness, restlessness, sweating, shakiness, muscle twitching, vomiting, and nausea, but displayed no signs of drowsiness, confusion, slurred speech, unsteady gait, or involuntary eye movements. (App. 241a, 256a.)

After receiving his medication, Hamilton walked back up the stairs and toward his cell. Before reaching his cell, Hamilton turned and walked back toward the stairway. When he reached the top of the stairwell, he either jumped or fell over the railing to the ground approximately eleven feet below.[2] Although Hamilton initially landed on his feet, he fell back and hit his head on the concrete floor. Nurse Sharp immediately attended to Hamilton and directed Captain Shawn Carna, a correctional officer at the Jail who observed the incident, to call an ambulance. Paramedics arrived within ten minutes, and Hamilton was transported first to Jameson Memorial Hospital and then to St. Elizabeth Health Center. On September 25, 2006, Hamilton died of the head injuries he sustained at the Jail.

In September 2008, Navolio, individually and as administratrix of Hamilton's estate, sued Lawrence County and PrimeCare, asserting claims pursuant to § 1983 for violations of Hamilton's Fourth, Eighth, and Fourteenth Amendment rights and a state law negligence claim. Both Defendants filed motions for summary judgment as to Navolio's federal claims, and the Magistrate Judge to whom the motions were referred issued a Report and Recommendation recommending the motions be granted. Analyzing Navolio's inadequate medical care claim

---

[2] The parties dispute whether Hamilton jumped or fell over the railing; however, this dispute is not material to our disposition.

under the Eighth Amendment, the Magistrate Judge concluded Navolio had failed to show Hamilton had a serious medical need or that any state actor had been deliberately indifferent to any such need. The Magistrate Judge concluded Navolio's remaining federal claims were also insufficient, finding Navolio had not attempted to establish a Fourth Amendment violation and finding the Fourteenth Amendment claim was superseded by Navolio's Eighth Amendment allegations. Having determined Navolio failed to establish a violation of Hamilton's constitutional rights, the Magistrate Judge concluded Lawrence County and PrimeCare could not be liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). After reviewing Navolio's objections, the District Court adopted the Report and Recommendation as the opinion of the Court, granted the Defendants' motions for summary judgment as to Navolio's federal claims, and declined to exercise supplemental jurisdiction over Navolio's state law claim. Navolio timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*, applying the same standard as the District Court, and we may affirm "for any reason supported by the record, even if not relied on by the District Court." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003). Summary judgment is proper when, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Material facts are those facts which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

4

248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.

Navolio presses two claims on appeal: a claim for denial of adequate medical care and a substantive due process claim based on the state-created danger theory. Navolio argues the District Court erred in granting summary judgment because she presented evidence from which a reasonable jury could conclude Hamilton's Eighth and Fourteenth Amendment rights were violated and the policies of Lawrence County and PrimeCare caused these violations. We address each claim in turn.[3]

## A.

Because Hamilton was a pretrial detainee, Navolio's inadequate medical care claim arises under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, as Navolio alleges. *Natale*, 318 F.3d at 581. We have previously recognized the Fourteenth Amendment "affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). We have also distinguished between pretrial detainees' Fourteenth Amendment right to protection from "punishment" prior to an adjudication of guilt and convicted prisoners' Eighth Amendment right to "protection from punishment that is 'cruel and unusual.'" *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Navolio does not argue the Due Process Clause of the Fourteenth Amendment provides additional protections, but instead argues her inadequate medical care claim should have been sustained under the standard

---

[3] Although Navolio also makes passing reference to her Fourth Amendment seizure claim in her statement of issues (Appellant's Br. 3), she presents no argument as to how Hamilton's Fourth Amendment rights were violated. We agree with the District Court that Navolio has failed to establish a Fourth Amendment violation.

5

applicable to such claims under the Eighth Amendment. (*See* Appellant's Br. 28-31.) In similar circumstances, we have analyzed inadequate medical care claims by pretrial detainees under the Eighth Amendment standard, evaluating whether the evidence shows "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. We will do the same here.

We assume, for purposes of this appeal, the chemical withdrawal Hamilton experienced during his detention was a serious medical need. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) (recognizing a serious medical need includes one that "has been diagnosed by a physician as requiring treatment"); *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 576 (3d Cir. 1979) (prisoner's severe drug withdrawal symptoms constituted a serious medical need).[4] The remaining question, therefore, is whether Navolio produced sufficient evidence to create a genuine issue of material fact regarding prison officials' deliberate indifference. We conclude she did not.

Deliberate indifference requires more than negligence or medical malpractice. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Rather, a prison official acts with deliberate indifference when "the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Natale*, 318 F.3d at 852 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, to survive summary judgment on this issue, Navolio was required to point to some evidence suggesting Jail or PrimeCare employees knew of a substantial risk of harm to Hamilton and failed to act despite that knowledge. *Id.*

---

[4] Navolio also appears to argue Hamilton had a serious medical condition because he had a "particular vulnerability" as a result of his detoxification medications. (Appellant's Br. 19-20.) We disagree. Although we have recognized in pretrial detainee suicide cases that "[a] particular vulnerability to suicide represents a serious medical need," *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005), this "particular vulnerability" standard has no application here.

6

Navolio argues Lawrence County and PrimeCare acted with deliberate indifference by requiring Hamilton to walk up and down a flight of stairs unassisted to obtain his medications while he was undergoing chemical withdrawal and taking detoxification medications. However, there is no evidence anyone at the Jail knew Hamilton was experiencing any symptoms of withdrawal or side effects of his detoxification medications that would have made it unsafe for him to walk up and down the stairs. To the contrary, Sharp evaluated Hamilton moments before the incident and determined he was walking without difficulty, "[d]id not appear to be in any distress," showed no signs of unsteady gait, drowsiness, or confusion, and had no complaints other than vomiting. (App. 149a-150a, 153a-154a.) In these circumstances, we cannot conclude Sharp was deliberately indifferent in permitting Hamilton to walk back to his cell unescorted. *See Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (noting the deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients").

Navolio also argues PrimeCare's policy of restricting detoxifying inmates to bottom bunks shows awareness of the risks associated with the detoxification process. However, Sharp testified the reason for this practice was "a small percentage of people" undergoing detoxification would experience seizures or dizziness due to dehydration. (App. 147a-148a.) As noted, the record refutes any suggestion Sharp (or anyone else at the Jail) had reason to believe Hamilton was experiencing such symptoms. The record also refutes any suggestion Sharp disregarded any risk to Hamilton as a result of the detoxification process because Sharp evaluated Hamilton's withdrawal symptoms moments before the incident.

Navolio also points to the report of her experts, Dr. Pogos Voskanian and Dr. Cyril Wecht. Dr. Voskanian found PrimeCare's assessment, treatment, and monitoring of Hamilton

7

was "inadequate and inappropriate" and concluded PrimeCare's treatment of Hamilton "fell below [the] acceptable standard of care and constituted a breach of duty owed by the health care provider." (App. 344a-345a.) Dr. Wecht opined "the failure to employ strict observance for possible adverse drug reactions contributed to the occurrence of the accident." (App. 326a.) These conclusions amount to allegations of medical malpractice or disagreements as to the proper medical treatment for patients undergoing detoxification. As such they are insufficient to show deliberate indifference. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Finally, although Navolio notes an inmate had either jumped or fallen from the second level to the first level of the Jail on three separate occasions prior to the incident involving Hamilton, she points to no evidence suggesting any of these inmates fell over the stairway railing because of withdrawal symptoms or the side effects of detoxification medications.

Because Navolio failed to produce evidence from which a reasonable jury could conclude Jail or PrimeCare employees were deliberately indifferent to Hamilton's serious medical needs, the District Court properly granted the Defendants' motions for summary judgment. *See Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008) (finding *Monell* claim against a municipality was properly dismissed where the court had found "no violation of Appellants' constitutional rights").

B.

Navolio also argues the District Court erred in granting summary judgment as to her Fourteenth Amendment claim pursuant to the state-created danger theory. The state-created danger theory is an exception to the general rule that "[t]here is no affirmative right to governmental aid or protection under the Due Process Clause of the Fourteenth Amendment." *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007). The theory recognizes a substantive due

8

process violation may occur "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quoting *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003)). To prevail on a Fourteenth Amendment claim pursuant to the state-created danger theory, a plaintiff must show, *inter alia*, conduct by a state actor which "shocks the conscience." *Id.*

Navolio argues the Defendants created a danger to Hamilton or rendered him more vulnerable to danger by (1) inadequately treating him for chemical withdrawal, leaving him vulnerable to impaired judgment, confusion, and disorientation, and (2) housing him on the Jail's second floor, thus requiring him to walk up and down the stairs to obtain his medications. Like Navolio's inadequate medical care claim, however, this claim fails for lack of evidence any state actor acted with the requisite mental state.

In a case where state actors have the time to make unhurried judgments, the level of culpability required to shock the conscience is deliberate indifference. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). We have previously acknowledged that, in the state-created danger context, deliberate indifference may not require a state actor's actual knowledge of a risk of harm "when the risk is so obvious that it should be known." *Id.* at 309-310. Even under this lower standard of culpability, however, Navolio is unable to meet her burden. As explained in our discussion of Navolio's inadequate medical care claim, there is simply no basis on which to conclude Jail or PrimeCare employees disregarded any risks associated with Hamilton's chemical withdrawal or detoxification medications by permitting him to walk back to his cell unescorted. Accordingly, summary judgment was appropriate as to Navolio's state-created danger claim.

IV.

Although we acknowledge the tragic loss of life that occurred in this case, we cannot conclude Hamilton's death was the result of a violation of his constitutional rights.  Accordingly, we will affirm the order of the District Court.